## Osmond Tower v. The Detroit, Lansing & Lake Michigan Railroad Company.

*Aid to railroad: Contract: Consideration: Evidence: Preliminary negotiations: Discretion.* In an action upon a contract promising to pay a specified amount upon the completion of a certain railroad, where the declaration avers the contract to have been made for a valuable consideration, and the antecedent negotiations out of which the contract grew are relied upon as constituting such consideration, it is not error to allow such preliminary negotiations to be very fully disclosed, and a wide discretion in that regard must be left with the trial judge.

*Evidence: Opinions: Inquiries not susceptible of direct answer.* An inquiry put to a laborer on the railroad, as to the number of persons ordinarily required on a completed road to keep in repair a specified distance of the line, is held to have been properly overruled; the witness was not shown to be competent to express an opinion on the subject, and moreover the inquiry is not susceptible of a direct answer, as there is and can be no general rule on the subject.

*Finding of facts: Questions of fact: Practice.* The finding of the circuit judge, upon a trial by the court without a jury, is conclusive upon every question of fact specifically passed upon.

*Finding of facts: Evidence: Reasons: Review: Practice.* It is not error (though not a commendable practice) for the judge's finding to embrace some of the evidence and to state the reasons which brought him to his conclusions; but this will not enable the court of review to weigh the evidence or to pass upon the soundness of the reasoning given.

*Promise in aid of railroad: Completion of road: Condition: Performance: Construction.* A finding that the condition of the contract in suit was performed "as the parties should be understood to have intended," and that the condition "ought to be held performed," is equivalent to a finding that it was performed according to the intent of the parties, or according to its legal effect.

*Contracts: Construction: Aid to railroad: Completion of road.* A ruling that the word "completed" in such a contract as the one in suit here has a different meaning from that it has in a contract for the construction of the road, is held not error; the purpose of such a condition, when embodied in a contract made in aid of the road, is accomplished when the road is put in a condition for regular business.

TOWER *v.* DETROIT, L. & L. M. R. R. CO.

*Interest: Happening of a specified event: Notice: Performance of condition.*
An allowance of interest according to the terms of the contract is not
erroneous, though there was no showing of notice to defendant that the
condition of the contract had been performed.

*Heard June 9.    Decided June 20.*

Error to Ionia Circuit.

*Lemuel Clute,* for plaintiff in error.

*Blanchard & Bell* and *G. V. N. Lothrop,* for defendant in
error, to the point that the performance or completion
contemplated by a contract is such only as is required
by the true spirit and meaning of the contract and the
intention of the parties as therein expressed, cited: *2
Pars. Cont., 656; O'Neal v. Henry, 3 Jones, Law,
517;* that where a party stipulates to do a certain thing
in a certain specified event which may become known to
him, or with which he can make himself acquainted, and
which does not lie within the peculiar knowledge of the
opposite party, he is not entitled to notice of the happen-
ing of the event unless he stipulates for it.—*Vyse v.
Wakefield, 6 M. & W., 452; Douglass v. Howland, 24
Wend., 48; Breedlove v. M. & F. R. R. Co., 12 Ind.,
114.*

COOLEY, CH. J:

The facts in this case are very fully set out in the find-
ing of the circuit judge, as follows:

"This suit is brought to recover the amount claimed to
be due on a certain contract made by the defendant, a copy
of which reads as follows, to-wit:

"'$1,000.

"'For value received, I promise to pay to the order of
H. H. Smith one thousand dollars, one year after the com-
pletion of the proposed Ionia, Stanton & Northern Railroad
to Sheridan, in Montcalm county, from its junction with
the Detroit, Lansing & Lake Michigan Railroad; provided

34 MICH.—42.

said railroad be completed to Stanton May 1, 1873.    Interest on the note at seven per cent. after the completion of the said railroad to Sheridan.

    "'Dated Ionia, July 20, 1872.

       "' (Signed)             OSMOND TOWER.'

"From the testimony I find the facts in the case to be as follows, to-wit:

"The Detroit, Lansing & Lake Michigan Railroad Company was duly organized under the laws of this state in the year A. D. ——, and has been doing business in the exercise of the privileges of its charter since.

"In 1871 and 1872 there was a project under discussion for the building of a branch road from plaintiff's line at the city of Greenville to the village of Stanton.

"The citizens of Ionia preferred and advocated the building of a branch from Ionia to Stanton some time in the summer of the latter year, 1872.    The citizens of Ionia, Sheridan and Stanton received assurances from James F. Joy, through Mr. H. H. Smith, that if they would raise forty-five thousand dollars, and procure the right of way, the road should be built from the plaintiff's road near Ionia, within three or four miles, north to Stanton.    At this time, and during the years 1872 and 1873, H. H. Smith was the president of the Detroit, Lansing & Lake Michigan Railroad Co.    Mr. Joy was one of its directors, also president of the Michigan Central Railroad Co., and represented Boston capitalists interested in both roads.    A subscription paper was drawn up and circulated for the purpose of raising the money, and steps were taken to secure the right of way.    Mr. Tower, the defendant, Mr. Stanton, Mr. Bell, Mr. Page, and others, were active in the circulation of the subscription paper, and in the procuring of the right of way.    Mr. Tower subscribed, in the name of 'O. Tower and Son,' one thousand dollars.    About forty thousand dollars were raised by subscription.    Page & Wilson gave their bond that the balance should be subscribed or paid.    Mr. Page, Mr. Stanton and

others, gave their bond that the right of way should be pro-cured.

"On the 16th of July, 1872, the subscribers met and duly organized under the laws of this state, 'The Ionia, Stanton & Northern Railroad Company.' Its route was from its junction with the Detroit, Lansing & Lake Michigan Railroad, at a point three or four miles northerly from Ionia, to Sheridan and Stanton. Mr. Tower was present and took part in its organization.

"Mr. H. H. Smith was duly elected president of the new company, and acted as such till its consolidation under the laws of this state with the Detroit, Lansing & Lake Michigan Railroad Co., some time in December, 1872. Under articles of consolidation the name Detroit, Lansing & Lake Michigan Railroad Co. was retained. Mr. Smith remained as president, and was the active managing man in the building of the Stanton branch.

"The subscription paper was circulated prior and subsequent to the organization of July 16th, and notes or contracts executed and handed over to the person or persons having the paper in charge in adjustment of subscriptions.

"On the 20th of July, 1872, Mr. Tower executed this note or contract, and handed it over in the same way, and in adjustment of his subscription.

"On the 25th of July, 1872, Mr. Page, Mr. Stanton and others, went into Detroit and had an interview with Mr. Joy and Mr. Smith for the purpose of closing the arrangements for building the road. The whole matter was closed up at that interview, or soon after. The notes or contracts taken upon subscriptions, the bond of Page and Wilson for the balance of the forty-five thousand dollars, and the bond of Page, Stanton and others for the right of way were handed over and contracts entered into for the building of the road. Mr. Tower's note or contract was among those that were handed over.

"Mr. H. H. Smith, the payee named therein, endorsed.

and delivered same to the plaintiff.　The endorsement was in words and letters following, to wit:

"'Pay to the order of D., L. & L. M. R. R. Co. without recourse.'

"'[Signed]　　　　　　　　H. H. SMITH.'

"The letters 'D., L. & L. M. R. R. Co.' are the initials and stand for 'the Detroit, Lansing, & Lake Michigan Railroad Company.'

"Mr. Tower knew the object of his subscription, that it was to aid in building the road from Ionia to Stanton; he knew of Mr. Joy's proposition, and that this note or contract was to be used as part of amount, to be used if whole amount was raised.　Such was his testimony.

"Mr. Tower did not go to Detroit on the 25th of July with Mr. Page, Stanton and others, but he authorized them to go and make arrangements for building the road.

"The contract for grading, ready for the ties, was taken by Page & Wilson.　They commenced at the Junction and worked north, finishing about the first of January, 1873.

"Trains commenced running regularly over the road from Sheridan to Ionia on the 16th of December, 1872, and over the entire line from Stanton to Ionia on the 28th of April, 1873, and have continued so to run since, except during the snow blockade in the winter of 1874–5,—heavy mixed trains with a passenger coach attached.　Time tables were published and posted at those dates.　No fences had been built, and no turn tables at either Sheridan or Stanton.

"Upon the trial, one Peter Larsen, an employé of the plaintiff, was introduced by the defendant as a witness in his behalf, and was duly sworn and testified as to matters touching the completion of the road.　The attorneys of the respective parties admitted that the facts were in accordance with his testimony, and the court so finds.　This testimony was as follows, to-wit:

"'My name is Peter Larsen.　I reside in Stanton; have for two years; worked on said road; began March 20, 1873;

worked for six months between Stanton and Sheridan until middle of August; in March, when I began work, the ties rested on blocks; there were twenty or twenty-five men on lifting gang, and twenty to twenty-five men on gravel train; in April, thirty to thirty-five men on each train; in May, about thirty-five men on each train; in June, forty to forty-five men on each train; in July, fifty to fifty-five men on each train; the lifting gang first pulled out blocks, and put gravel under, and did this to first of May; after that we went over four or five times; the ground settled; when we went over the first time we pulled out the blocks (from under ends of ties) and put in gravel; we filled in under ends of ties, and between ends of ties, so as to bring to line; we used the gravel under ends of ties, and as far towards center of track as to be inside of rails, and between ends of ties to make solid; and when gravel enough, all the way under ties, but frequently not gravel enough, and there would be spaces under the middle of ties not filled, and between middle of ties; this the first time; we leveled the track the best we could the first time, then we went over after this four or five times, filling in more and lifting track where settled, etc.; made the track the best we could the first time, but could not make it level; in May I lifted, carried the level, and in June and July we worked over time; I put in thirty-five days in June, and so did other men; we raised the track every time we went over it; the last time we went over we only raised where there were sink holes; when we left the track in August we had ballasted up to top of ties.'

"Cross-examination—'When we went over first time we brought to a line as well as we could, but it would settle of itself, and by running of trains it settled more or less; we leveled as well as we could; comparatively level, but not as level as an old track. In graveling we put in more gravel where it was soft and wet; we graveled all the way; we lifted and graveled every time; I have worked on railroads; this business two years. When we went over second time

we lifted up every tie, some more than others, and in some places put in more dirt than others. Between first and second time over it settled some all along, but more in swamp holes than other places, leaving track uneven. We went over the second time to make it level. Between second and third times it settled, but not so much, not much in cuts. Settled on embankments more than in cuts. Settled first time graveling in cuts, but not after first time.'

"Redirect examination—'The last time over we filled in and leveled between center of ties. Had before that done it where there was gravel enough. Six miles from Sheridan to Stanton.'

"During the trial of this cause and at its close, by the written request of the respective parties hereto attached, and marked exhibit 'A' and 'B,' the attention of the court was called to the testimony upon three points: *first*, as touching the question of consideration; *second*, as to the question of delivery; and, *third*, as to completion of road to Stanton May 1, 1873.

"And the attention of the court was also called to certain propositions of law supposed to be of importance in the decision of the case.

"Upon the first and second points there cannot, we think, be any difficulty. The defendant and other citizens of Ionia, Sheridan and Stanton were in favor of and took an interest in the building of this road; a proposition was made to them by Mr. Joy to build the road if they would raise forty-five thousand dollars and procure the right of way. A subscription paper was drawn up for the purpose of raising the amount; the defendant signed the same in the name of his firm in the sum of one thousand dollars; he assisted in the circulation of the paper, in procuring the right of way, and in the organization of the company; he gave the note or contract in suit in adjustment of his subscription; he authorized the acceptance of the proposition and the closing of the contract for building the road, and the use of his note or contract in doing so; all the arrange-

ments were perfected, his note or contract used, and the road built.· Under the circumstances the· defendant cannot, as it seems to us, raise any question as to the consideration or delivery.

"As to these points, we think the case is fairly and justly with the plaintiff.

"As to the third point, the completion of the road, we find that the defendant's note or contract contains the following words, to-wit: 'Provided said railroad be completed to Stanton May 1, 1873.' The question of liability turns on this proviso. Confessedly the contract was ·to pay one thousand dollars to aid in the construction of the road then contemplated. Two days before the 1st of May, 1873, the road was a continuous one, over which heavy trains were running daily to Stanton; so that there was a road bed, ties in place, and rails down continuously, and in such condition as to justify and secure traffic over the road, and this is a compliance with the condition or proviso, viz.: 'Be completed to Stanton May 1, 1873,' as the parties should be understood to have intended. To give construction to the contract, the court must occupy the standpoint of the parties at the making of the instrument. The defendant had no interest in the question whether the last spike was driven and the last shovel of ballast deposited by May 1st, but he had a purpose and interest to have a railroad over which trains could pass safely and freely, conveying passengers and freight. What novice does not know that road beds settle, and continue to settle for some time after trains begin to run, especially if the bed has been recently built? It should be noticed that most of the work had been done in the winter; that there were low and wet places upon the line, and that trains commenced running as the ground was thawing out, and in the season of showers. Can it be supposed that the parties contemplated that the road bed should be settled to its permanent place, and that the road should be in all respects completed as a first class railroad? The fact is, looking to the contracting parties and the object of the

contract, they could have been governed by no such consid-
erations.    The true rule, in the absence of specifications as
to the mode and manner of completion, is, that the road
should be substantially, and to all intents and purposes, a
railroad in good condition for the passage of freight and
other trains with safety.    The testimony shows that such
was the condition of this road between the Junction and
Sheridan on the 16th of December, 1872, and between the
Junction and Stanton on the 28th of April, 1873.    Such
being the facts, the condition in the contract ought to be
held performed.

"The difficulty upon the part of the plaintiff is this, he
would have the contract examined and passed upon as though
between the plaintiff and a contractor.    In such a case the
words 'be completed,' would clearly import a permanent fin-
ishing up.    A court would so hold, looking at the object
sought to be accomplished and the intention of ·the parties,
as gathered from the contract and its subject matter.    But
this is a case where suit is brought upon a contract given
by way of a subscription to aid in building a railroad.    Still
the rule of construction is the same.    The court must look
at the intention of the parties from the contract and its
subject matter, and the purpose for which it was evidently
made.

"Upon this contract, and between these parties, we find
the true rule to be as heretofore stated.    Any other view
would defeat a recovery if one spike was not driven, one tie
settled out of line, one rail out of place.

"There is due upon this contract, at this date, the sum
of eleven hundred and eighty three and seventy-four one hun-
dredths dollars [$1,183.74]."

On the trial the plaintiff was allowed to go very fully
into evidence of the preliminary negotiations which finally
resulted in the giving of the contract in suit, and several
objections made by the defendant to the admission of such
evidence were overruled.    As the declaration only averred
that the contract was made for a valuable consideration, and

the antecedent negotiations were relied upon as constituting such a consideration, it was very proper to allow them to be very fully disclosed, and nice rules for the reception and exclusion of evidence in such cases would be difficult to prescribe and mischievous in practice. We are not satisfied that the court exceeded the limits of a reasonable discretion in any of its rulings, and if the relevancy of some of the evidence is not very apparent, it is certain that it was not of a nature to prejudice Mr. Tower in any way.

We are of opinion also, that the court did not err in overruling the inquiry put to the witness Larsen, who was a laborer on the road, regarding the number of persons ordinarily required on a completed road to keep in repair a specified distance of the line. The witness was not shown to be competent to express an opinion on the subject; and moreover the inquiry was not susceptible of a direct answer; there is, and can be, no general rule on the subject. The nature of the road bed and superstructure, the character of the country through which it runs, the number of trains passing over the road; these and many other circumstances are so essentially and radically different in the case of different roads as to render such a question incapable of answer, and to justify its exclusion on that ground.

The main controversy in the case related to the question whether the road was actually completed within the stipulated time. This was a question of fact, and if it has been specifically passed upon by the circuit judge, we must be concluded by his finding. The plaintiff in error insists that the finding is not specific upon the point; and that is one of the errors relied upon for reversing the judgment.

A careful examination of the finding renders it apparent that the judge has not drawn it up in the usual form, confining it strictly to the facts deduced from the evidence; but that he has set forth some portion of the evidence, and has also stated, in part at least, the reasons which have brought him to his conclusions. There is no error in this, though the practice is likely to lead to questions such as are

34 MICH.—43.

raised in this case, as to what are and what are not the facts actually found.   Only with these has the court of review any concern;  it cannot weigh the evidence, nor pass upon the soundness or unsoundness of the judge's reasoning. Our duty on this part of the case is confined to the one question, whether the facts found make out a cause of action; if they do, and there are no errors in other parts of the record, the judgment must be supported.

The judge finds that the condition of the contract was performed "as the parties should be understood to have intended."   In another part of the finding he says that "the condition in the contract ought to be held performed." With these statements are given the judge's reasoning;  but with that, as before stated, we have nothing to do.   Had the judge limited himself to the specific statement that the condition of the contract was performed, or that the road was completed within the time specified in the contract, there could have been no doubt of its sufficiency.   The question now is, whether what he has said is equivalent in substance;  and we are compelled to say that we think it is. His finding in substance is, that the condition of the contract was performed according to the intent of the parties; and that is the same as saying that it was performed according to its legal effect.

Exception is taken to the judge's remark that the word "completed," when made use of in such a contract, may have a different meaning from what it would have in a contract for the construction of the road;  but in this he was doubtless correct.   In a contract for construction it would mean a completion in accordance with specifications;  but in a contract like the one in suit it is not likely the parties have any such exact completion in mind, and a less perfect construction may satisfy its intent, provided the road is in condition to be opened for regular passenger and freight traffic, and is actually in use.   The purpose of such a condition, when embodied in a contract made in aid of the road, is accomplished when the road is thus put in condi-

tion for regular business; and nothing in the finding on this point appears to us erroneous.

It is insisted that the court erred in allowing interest on the contract before notice to Tower that the condition had been performed. The allowance, however, was in accordance with the terms of the contract, and we find no error in it. And a careful examination of the record discloses no other ruling that seems to require special notice. The general principles that must govern contracts of this nature have been so fully considered by us in previous cases that we think it unnecessary to do more than to refer to them.— See *Underwood v. Waldron, 12 Mich., 73; Comstock v. Howd, 15 Mich., 237; Stevens v. Corbitt, 33 Mich., 458;* and *Michigan Midland & C. R. R. Co. v. Bacon, Ibid., 466.*

The judgment must be affirmed, with costs.

The other Justices concurred.