STATE OF MINNESOTA, *ex rel*. CENTRAL RAILROAD COMPANY OF MINNESOTA, *vs*. TOWN OF CLARK.

March 21, 1877.

**Minnesota & Northwestern Railroad Company Created before Adoption of Constitution.**—When Sp. Laws 1867, *c*. 17, which amended, in many important particulars, the original charter of the Minnesota & Northwestern Railroad Company, was passed, the company was in existence, so that said chapter 17 is not obnoxious to that provision of our constitution which forbids the formation of corporations (not municipal) by special act.

**Municipal Bonds in Aid of Railroad—Compliance by Company with Conditions of Issue.**—*Held*, that the facts in this case show a substantial compliance on the part of the relator with the conditions upon which its rights to the bonds in question in this case depended, viz., that it "shall, on or before the 1st day of January, A. D. 1875, have completed, ironed, and equipped its line of road from the village of Wells to the city of Mankato, and have the same in operation for the transportation of passengers and freight."

**Same—Constitutional Amendment Limiting Amount to be Issued is not Retrospective.**—In 1872 the constitution of this state was amended by adding to article 9 the following section: "Section 14. The legislature shall not authorize any county, township, city, or other municipal corporation to issue bonds, or become indebted in any manner, to aid in the construction or equipment of any or all railroads, to any amount that shall exceed ten *per centum* of the value of the taxable property within such county, township, city, or other municipal corporation; the amount of such taxable property to be ascertained and determined by the last assessment of said property, made for the purpose of state and county taxation, previous to the incurring of such indebtedness." *Held*, that this amendment of the constitution has reference to future legislation only, and does not affect laws which were in force at the time of its adoption.

Alternative writ of *mandamus*, issued out of this court, and directed to the supervisors and town clerk of the town of Clark, in the county of Faribault.

*M. G. Willard*, for relator.

*M. J. Severance* and *M. W. Greene*, for respondent.

The constitutional amendment of November 5, 1872, (which is quoted at length in the opinion,) abrogated the law by which the issue of bonds by defendant, in excess of $15,000, was authorized. When a constitutional amendment is adopted, taking away the power of the legislature.

to pass laws on a given subject, it repeals all existing laws on that subject. *Ogden* v. *Saunders*, 12 Wheaton, 213, 278; *Pierce* v. *Delameter*, 1 N. Y. 17; Sedgwick on Stat. and Const. Law, 550.

To effect this no express repeal was necessary. Constitutions are not, in all respects, construed like acts of the legislature—*e. g.*, constitutional provisions are never directory—and the rule that repeals by implication are not favored has no application in the construction of a constitution. The reason given for that rule is that laws are presumed to be passed with deliberation, and with full knowledge of all existing laws on the same subject, and, therefore, it is reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any prior law on the same subject, unless the repugnancy is palpable. It is said that a legislature, knowing the acts of its predecessors, if intending to undo their work, would show its knowledge of those acts, and its courtesy to their authors, by the use of apt words of repeal. But constitutions embody the supreme will of the people, and establish the fundamental policy of the state. They owe no deference to any department of the government, no courtesy to the creatures they create. When a constitution, in a given case, announces a fundamental policy, plainly hostile to the provisions of a prior law on the same subject, the law ought to fall for repugnancy. Constitutions, in their phraseology, rarely go beyond the announcement of a great principle or universal rule. They never employ the language of repeal in express terms. Hence, few, if any, instances of express repeal can be found in them; and the repeal of laws by constitutional enactment is always a repeal by repugnancy. Constitutions never say that " all laws inconsistent herewith are hereby repealed or 'abrogated ;'' on the contrary, when it is intended to save existing laws, or property rights acquired under them, from the operation of a repugnant constitutional provision, this is uniformly effected by exact

expression and declaration. Instances of this are found in sections 1 and 2 of the "schedule" of the constitution of this state. By the latter section all laws not repugnant are saved; but those that are repugnant are not declared repealed. That was unnecessary. Except for such saving clauses in constitutions, every law and every right in conflict therewith would fall at once, except such as might be saved by the paramount federal constitution.

It is true that the provision in question is an amendment, and that amendments take effect only from their adoption; but they are to be construed as if originally a part of the constitution, and they may have both a prospective and retrospective operation. The provision in question is not retroactive, in the technical sense, if at all. It acted *in presenti* as an absolute repealing act by withdrawing from the legislature the power to authorize municipal corporations to give aid to railroads beyond a specified limit.

The constitutional provision in question should, by proper interpretation, read, "the law shall not authorize," etc., and it must have the same effect as if the prohibition were imposed directly upon the municipal corporations, instead of upon the legislature from which such corporations must derive the power to do the acts which it is the purpose of this provision to prevent. No municipal corporation can aid the construction of a railroad in the absence of a law conferring the power, and that law must come from the legislative department of the government. The natural way of preventing the exercise of the power thus flowing from the legislature is to forbid the legislature to confer it. And what legislature is referred to in the provision in question? Not any legislature created by the amendment, for it created none; nor any legislature to spring into existence in the future, for none such is foreshadowed. The reference is to the legislature originally created by the constitution. The laws in question were enacted by the legislature thus created. The amendment in question, unless intended to affect future

cases only, would be couched, as it is, in the same language as if originally placed in the constitution, and adopted as a part of it. If it had been part of the original constitution, it would certainly have effected the result now claimed for it, whether the prohibition had been directed to the legislature or the municipalities. The acts directly prohibited by the constitution are not such as depend on the exercise of legislative power. The latter are prevented by a prohibition directed to the legislature, as in this case. As this provision employs the natural language of general prohibition, any laws repugnant to it must fall, whether passed prior or subsequent to the date of its adoption.

The laws under which the relator claims do not come within the saving clause of the constitution. They are no part of the relator's charter, and no contract to issue the bonds was made until after the adoption of the constitutional provision in question. That was adopted in 1872, and the first vote of the town, under which the relator claims, was had in 1873. The mere grant of a naked power to municipal corporations to vote aid to railroads creates no vested right in any one.

This case is distinguishable from *State* v. *Macon County Court*, 41 Mo. 453, and *Cass* v. *Dillon*, 2 Ohio St. 607; and see the dissenting opinion of *Ranney*, J., in the latter case.

Counsel argued that the relator was not a corporation, and that it had not complied with the conditions on which the bonds were voted. The argument on these points is stated in the opinion.

BERRY, J.[1] By Sp. Laws 1868, c. 24, as amended by Sp. Laws 1869, c. 44, and Sp. Laws 1870, c. 49, any town in the county of Faribault was authorized to issue bonds to aid in the construction of any railroad running into such county. No limit was placed upon the amount of bonds which might be issued by any town, upon the determination of its voters.

[1] Gilfillan, C. J., having been of counsel, did not sit in this case.

The respondents in this case represent the town of Clark, which is in the county of Faribault, and which is, in effect, the party against which the present proceedings are directed. At a special town meeting, duly and legally held on December 3, 1873, said town of Clark voted to issue its bonds to the amount of $30,000 to the relator, to aid in the construction of its railroad from the village of Wells to the city of Mankato. The town has issued and delivered to the relator $14,000 of the bonds voted. It denies its liability to issue more, upon three grounds.

1. The first ground is that the relator is not a corporation legally constituted, and that, therefore, it has no existence. The relator's original charter is found in Laws 1857, ex. sess., c. 49, being "An act to incorporate the Minnesota & Northwestern Railroad Company," the name having been changed to "The Central Railroad Company of Minnesota," under Sp. Laws 1869, c. 61, § 4. Section 16 of the original charter was amended by Sp. Laws 1858, c. 100, so as to read as follows, viz. : "If said company shall not organize within two years from the passage of this act, and actually commence building said railway within three years from their said organization, and complete the same to New Ulm within seven years from said organization, and complete the whole of said railway within fifteen years from their said organization, then this act shall be null and void as to all that portion of said railway not completed within the above specified time or times. But this company shall not be dissolved by the non-completion of any portion of said railway, as to the portion completed at the time, but shall continue to exist and be valid to all intents and purposes for the parts or portions of said completed railway, and the said company shall continue to survive to that extent and no further."

The corporation having been created *in presenti* by section 1 of the original charter, it had, under this section of the act of 1858, the right to complete some portion of its

road (which extended from Big Stone Lake, *via* New Ulm, to the Iowa line) within fifteen years from the time of its organization, which was to take place at some time after the passage of the act of 1858, on July 23, 1858. As to some portion of its line, the corporation would remain in existence until at least fifteen years from July 23, 1858—that is, at least until July 23, 1873. In 1867 the corporation was, then, for aught that appears to the contrary, an existing corporation. Sp. Laws 1867, *c.* 17, which amended in many important particulars the original charter, was, therefore, passed while the original corporation was in existence, and, as an amendatory act, it is not obnoxious to that provision of our constitution which forbids the formation of corporations (not municipal) by special act. This disposes of the respondent's point that the relator has no corporate existence, as it is based only upon the supposed repugnance of the act of 1867 to the constitutional prohibition just mentioned.

2. The second ground upon which the respondent resists the relator's demand for further bonds is that the conditions of issue have not been complied with. By the vote of the town the bonds were to be issued only " on condition that said company shall, on or before the first day of January, A. D. 1875, have completed, ironed, and equipped its line of road from said village of Wells to the city of Mankato, and have the same in operation for the transportation of passengers and freight."

The testimony in the case shows that "the relator, on or before November 23, 1874, graded, completed, ironed, and equipped its separate line of railway from the city of Mankato, in Blue Earth county, to a connection with the Southern Minnesota railroad, at a point in the said town of Clark, in Faribault county, between a fourth and a half a mile distant from said village of Wells in said town; and from said point the relator, from and after that date, ran all its trains on the track of the Southern Minnesota Railroad

Company to the depot of the latter company in the said village of Wells, and the relator, from said point to said depot, then and now has the joint use of the track and depot of the Southern Minnesota Railroad Company, under satisfactory contract arrangements for the joint use and occupancy thereof by and between the two companies ; and ever since November 23, 1874, the relator has made up at Wells and run daily trains, excepting Sundays and a very few days when blocked by snow, for the transportation of the mails, passengers, and freight, to and from said depot from and to said city of Mankato, and intermediate points." By Sp. Laws, 1870, c. 75, § 6, whenever the relator shall "find it necessary or convenient to unite with any other railroad company * * * in joint use of any * * * depot grounds, tracks, or other railroad property, it shall be lawful for them to agree upon the terms of said * * * joint use, * * * and any agreements made for that purpose may define the rights of the respective parties."

In view of the authority thus conferred by law, the facts disclosed by the testimony above recited show a substantial compliance with the conditions upon which the relator was to be entitled to the bonds. The relator's "line of road," from Wells to Mankato, is "completed, ironed and equipped," and "in operation for the transportation of passengers and freight," so that the public enjoy the whole benefit of an independent line of railroad from one place to the other.

3. In 1872 the constitution of this state was amended by adding to article 9 the following section : "Section 14. The legislature shall not authorize any county, township, city, or other municipal corporation, to issue bonds, or to become indebted in any manner, to aid in the construction or equipment of any or all railroads, to any amount that shall exceed ten *per centum* of the value of the taxable property within such county, township, city, or other muni-

cipal corporation; the amount of such taxable property to be ascertained and determined by the last assessment of said property made for the purpose of state and county taxation previous to the incurring of such indebtedness." Prior to the taking effect of this amendment the power of the legislature to authorize the issuing of bonds, or the incurring of indebtedness, (in aid of railroads,) by any of the municipal corporations mentioned, was unlimited as respected the amount of bonds and indebtedness. Bonds to the amount of $14,000 having already been issued to the relator, it is made to appear that the issue of the remainder of the whole number voted will be an issue of an amount exceeding the 10 *per centum* limit prescribed by the constitutional amendment.

In our opinion the respondent's claim that the constitutional amendment referred to has any application to the facts of this case cannot be sustained. At the time when the amendment was made, (in 1872,) the laws under which the town of Clark was authorized to issue the bonds in question had been enacted, and were in full force. They placed no limit upon the amount of bonds issuable, save such as might be fixed by the voters. The language of the constitutional amendment is, "the legislature shall not authorize," etc. In its plain, natural, and ordinary signification, the language is purely prospective, having no reference to what the legislature may have done in the past, but imposing a limitation upon its authority in the future. After a careful consideration of the ingenious and able argument of the respondent's counsel to the contrary, we are unable to find any good reason for attributing to the amendment any other signification. If it had been the design to subject all past legislation to the 10 per cent. limitation, it would have required so few words to express such design clearly that their absence is of the highest significance. In our opinion the constitutional amendment has reference to future legislation only, and therefore no

application to the case at bar. A similar provision has received the same construction in *Cass* v. *Dillon*, 2 Ohio St. 607, in *State* v. *Macon County Court*, 41 Mo. 453, and in several subsequent cases in the states in which these decisions were made. To the *ab inconvenienti* suggestion that municipal corporations which are authorized to issue bonds *ad libitum*, by laws passed before the amendment, are by our constitution left in a perilous position, it may be answered that, where vested rights have not accrued, they can be extricated by legislative repeal.

This disposes of all the points made by the respondent, and our order is that a peremptory writ of *mandamus* issue, in accordance with the prayer of the complaint.