Dickman, J.
The Toledo, Delphos & Burlington Railroad Company, having become incorporated with the Toledo, Cincinnati & St. Louis Railroad Company by consolidation, all the rights, privileges and franchises, and all the property,, real, personal and mixed, of the former company, were transferred to and vested in the latter company. But it is claimed, that before the consolidation, the Toledo, Delphos & Burlington Railroad Company acquired by purchase ail the road-bed, right-of-way, material for construction, and all property of every description, of the Toledo & Grand Rapids Railroad Company — including debts, dues, demands, dioses in action, contracts, and subscriptions to capital stock — in or to which the last-named company, at the time of such purchase, had any *570 right or title. Whatever right of action, therefore, if any, the plaintiff may have against George P. Hinsdale, the defendant, must be derived through the Toledo, Delphos & Burlington Railroad Company, by virtue of the consolidation; and it is evident, that if no right of action was acquired by that company against the defendant, on his subscription to the stock of the Toledo & Grand Rapids Railroad Company, the plaintiff can maintain no action thereon.
. We are led then at the outset to inquire, whether the deed from the Toledo & Grand Rapids Railroad Company to the Toledo, Delphos <& Burlington Railroad Company, operated to vest in the grantee the ownership of the defendant’s unpaid contract of subscription, and authorized the purchasing company to make absolute the liability of the subscriber, by completing the unfinished road from Toledo to Grand Rapids. By the contract of subscription, the defendant agreed to take and pay for thirty shares of the capital stock of the Toledo & Grand Rapids Railroad Company at fifty dollars per share, payable on the order of the directors in installments of not more than ten per cent, every thirty days, “ to be paid when the road is completed,” the road to be a narrow guage railroad, and to cross the river at Grand Rapids.
The subscription was conditional, a condition precedent to the subscriber’s liability being the completion of the road.
The subscription was to be paid “ when the road is completed ” — when put in a condition for regular business. Tower v. Detroit, Lansing & Lake Michigan R. R. Co., 34 Mich. 328. Until the road was completed, the subscription could not become absolute, and take full effect as a stock subscription. It was only an offer to become a shareholder, and until the condition should be performed, the relation of the subscriber to the company as a stockholder would not arise. “ The performance of the stipulated conditions,” says Morawetz, “ is necessary to an acceptance of the offer to become a shareholder; and before the conditions have been performed the subscriber does not,,by virtue of his subscription, become a member of the company at all. It follows that he does not, until then, become entitled to the privileges nor subject to *571 any of the liabilities attaching to the status of a shareholder.” Private Corporations, § 78. It is not insisted that there is any objection to the subscriber inserting such conditions precedent as he may choose; and by statute, the directors of a railroad company may receive subscriptions to its capital stock, “ dependent upon the completion of the whole or any part of its road.”
Not being able, from lack of means, to perform the condition of the defendant’s subscription, by completing the construction of its proposed line of road, the Toledo & Grand Rapids Company, at the time of the sale of its road-bed and other property, had no claim against the defendant which it could then enforce; and by the sale,the company put it beyond its own power ever to complete its road, and render the defendant liable to it on his subscription. The company still retained its corporate capacity, character and franchise, but its road-bed, right of-way, and material for construction, being sold and conveyed in payment of an indebtedness to the grantee of over $265,000, any certificate of stock issued by it would have been of questionable value.
It is contended, however, that because of its inability to finish its road, the company was authorized to sell the same to another corporation that could complete it, and by thus performing the condition of the defendant’s subscription, fix' his liability. Subscriptions, it is true, are expressly embraced in the terms of the deed of transfer, but in the statutes authorizing the purchase of railroads, and the sale of road-beds, rights-of-way and other railroad property, we do not find authority conferred upon one company to sell and transfer to another company its conditional stock subscriptions.
But authority is invoked outside the statute, and it is said that power in a railroad company to contract, implies the power to sell and transfer obligations and securities taken by it in the prosecution of the object of its creation; and that such power to sell and transfer is an attribute of its corporate capacity, suitable to its purpose and business, and is believed to exist independent of statutory authority. When the, Toledo, Delphos & Burlington Company' made the purchase *572 from the Toledo & Grand Rapids Company, no liability of the defendant on his conditional subscription had matured; there was no legal debt due from him to the grantor, to be sold and transferred to the purchasing company. But without regard tó that consideration, it is a sound rule, that in the absence of express authority from the state, a railroad company cannot make a valid sale of its road or of its property essential to the operation or construction of its road, for the purpose of delegating the performance of its public duties to another company. And in Thomas v. Railroad Company, 101 U. S. 71, 82, Miller, J., says: “We take the general doctrine to be in this country, though there may be exceptional cases and some authorities to the contrary, that the powers of corporations organized under legislative statutes are such and such only as those statutes confer; that the charter of a corporation is the measure of its powers, and that the enumeration of those powers implies the exclusion of all others.” The question therefore presents itself, to what extent the authority of a railroad corporation to sell and transfer its conditional stock subscriptions, may be found in the statutes governing the case under consideration.
The statutory grant of authority for the purchase of a railroad, and for sale and transfer of the road-bed, right-of-way, and material owned by a company unable, through lack of means,-to complete the construction of its line of road, is found in sections 3300 and 3409 of the Revised Statutes. In determining whether under those sections, a railroad company has legal power and authority to sell and transfer to another railroad corporation, its contracts of subscription that are dependent on an unperformed condition precedent, if we look at the actual powers and purposes of the grant, it will, we think, be apparent that the power asserted is not incident to those granted, and not necessary to give effect thereto.
Section 3300 provides that “ any company may lease or purchase any part or all of a railroad constructed by another company, if the lines of road of such companies are continuous or connected, and not competing, upon such terms and conditions as may be agreed upon between the companies.” The *573 railroad to be sold must be constructed, finished, completed. The Toledo & Grand Rapids Railroad, it is conceded, was not completed when sold, but was only in process of construction. The section neither expressly nor by implication provides for the purchase of any other property except a constructed railroad. In perfecting the purchase, it is provided by sections immediately following, that there shall be a meeting of stockholders of each of the companies, to signify their assent to the purchase; and any stockholder who refuses his assent, may be entitled to receive from the purchaser the average market value of his stock, on the surrender of the same. The language of the several sections refers in unequivocal terms to the purchase of a railroad, as well known and defined ; but we do not see that the authority to make such a purchase carries with it, as a necessary incident, authority to purchase conditional stock subscriptions. Due care is taken to recognize and guard the rights of stockholders, but under section 3298 of the Revised Statutes, “ no subscriber to the stock shall be entitled to any of the privileges of a stockholder until his subscription is fully paid, nor shall he, for any purpose, be deemed a stockholder until the happening of the contingency upon which the installments on his subscription are made dependent.”
Erom the language of the deed to the Toledo, Delphos & Burlington Company, it is to be inferred that it was the design of the grantor to sell its road bed and other property, more especially under the enabling provisions of section 3409 of the Revised Statutes. The deed sets forth that the company, from lack of means, is unable to complete the construction of its .proposed line of road, and is desirous of selling the same. Section 3409 reads as follows :
“ A company, owning in whole or in part any road-bed and right-of-way for a railroad within this state, including those acquired by purchase at judicial sale, which, from lack of means, or other cause, is unable to complete the construction of its proposed line of road thereon, may sell, assign, and transfer the same, or any part thereof, to any other company incorporated under the laws of this state, with authority to construct and operate a railroad over the same route, or any part *574 thereof, which transfer shall include all work done upon such line of road, together with all material furnished therefor, not exempted by the terms of the grant, with all rights, privileges and easements, as fully as the same are or may be possessed by the company making the same, and shall, to the same extent, vest the title of and the right to enjoy the same in such grantee.” The four succeeding sections provide for the execution of the deed of transfer, in the manner provided by law for the conveyance of real estate; for a meeting of stockholders, and their ratification of the transfer; and for vesting in the grantee the title to the property transferred, together with the right to use, occupy and enjoy the same for the construction, maintenance and operation of .a railroad thereon.
According to the obvious meaning of these statutory provisions, there may be a sale and transfer of the road-bed and right-of-way, including work done upon and material furnished for the line of road, with all rights, privileges and easements strictly and directly connected with it, but not of such a contract of subscription as that made by the defendant. The words of the statute will apply rather to a conveyance of realty than to a transfer of other kinds of property. The title to the property sold is made to pass, with the right to use the property “ for the construction of a railroad thereon,” plainly indicating, that it is the road-bed and right-of-way for a railroad, of which a sale is contemplated, and not of conditional stock subscriptions. In authorizing and perfecting a sale under the statute of an unfinished road, it is observable that only those persons are consulted whose interests are designed to be embraced in the transfer, namely, stockholders in the legal sense, and not mere conditional subscribers to stock.
As we do not discover in the statute regulating the purchase of a constructed or completed railroad, or the sale of one unfinished, authority to sell and transfer conditional stock subscriptions, so, we find no provision that empowers a purchasing company to perform the conditions stipulated in the contract of subscriptions to capital stock, and, by so doing, fix and make absolute the liability of subscribers. If the Toledo, Del *575 phos & Burlington Company succeeded to the interest of the Toledo & Grand Rapids Company in the subscription contract between itself and the defendant, it must have done so in a way, and by means prescribed by the statute for the sale and not for the consolidation of railroads. Arguments drawn from the statutes of consolidation, lose much of their force when applied to the case under consideration. It is true, that it has been held in Mansfield, Coldwater and Lake Michigan R. R. Co. v. Stout, 26 Ohio St. 241, that when railroad companies consolidate under the act of 1856, the new corporation thereby created may perform the conditions named in subscriptions to the capital stock of the original companies, and require the subsci'ibers to pay their installments. But that was a case of two roads consolidated, in which the new company, by virtue of the provisions of the statute, acquired the ownership and control of stock subscriptions, and all the property of every description, of each of the old companies. By section 3384, of the Revised Statutes, when the consolidation is consummated, “ all and singular, the rights, privileges and franchises of each of the companies, and all the property, real, personal and mixed, and debts due on account of subscriptions of stock, or other things in action, shall be deemed to be transferred to and vested in such new company, without further act or deed.” And as by the statute, all debts, liabilities, and duties of either of the consolidating companies thenceforth attach to the new company, it is proper that the new company should succeed to stock subscriptions, choses in action, and other property as a fund from which to discharge the obligations of the respective companies. But a company purchasing the road-bed and right-of-way for a railroad, owned by another company, does not thereby, in the absence of special agreement, assume the debts of the vendor, and does not require the assets of the latter with which to pay such debts.
When a railroad company sells its road-bed and right-of-way, because unable, from want of means, or other cause, to complete the construction of its proposed line of road thereon, no transfer, as enacted by section 3412 of the Revised Statutes, can be made against the dissent of any stockholder, *576 expressly declared and filed in writing, without a guaranty from the grantee company, that it will cause to be issued to him certificates of its capital stock, equal in amount to his pro rata interest as a stockholder of the grantor, in the amount of which the property is sold. The defendant had no option to dissent or acquiesce in the sale. He was not a legal stockholder, and could have had no voice or standing in the meeting of stockholders, called by the president of the company to deliberate and pass upon the proposed sale ; and if he had refused his assent to the sale and transfer, he was not in a position to compel the grantee company to issue to him ft o rata certificates of its capital stock. Nor, as a conditional subscriber only, and without any of the privileges of a stockholder, was he in a position, upon a consummation of the sale and payment of any purchase-money, to demand a proportionate share of the amount realized. If the defendant did noi dissent, or had not the right to enter an effective dissent, the sale would progress to its consummation; but with no status as a stockholder in the Toledo & Grand Rapids. Railroad Company, and with no' statutory right to have stock assigned to him in the Toledo, Delphos & Burlington Railroad Company, we do not think it is within the meaning of the statute permitting the sale of the road-bed and right-of-way of an unfinished road, that the latter company, or the plaintiff by virtue of consolidation, should have a right of action against the defendant, on his unpaid contract of subscription. The sale and transfer of conditional stock subscriptions, do not therefore, as we think, come within the purview of section 84091 of the Revised Statutes; and in accordance with the aforegoing considerations, we have reached the conclusion that the judgments of the circuit court and court of common pleas should be affirmed.
Judgment accordingly,