THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. E. A. MAKEPEACE, *as Trustee of Augusta Township, in Butler County, et al.*

RAILROAD COMPANY—*Compliance with Contract—Entitled to Township Bonds.* Where the issuing of township bonds or warrants to a railroad company is dependent upon the condition that the company shall build, or cause to be built, and have in operation, with cars running thereon, by lease or otherwise, its railroad, from a certain city therein named, at or near the depot of another railroad company in the city, *held*, that the building of its road within 111½ feet of the limits of the city, and an arrangement by it with the other railroad company, whose road it intersects at that point, for the running of its trains over the road from its intersection to its depot within the city, and the operation of the road from the depot in the city over its entire line, will be regarded as a substantial compliance with the condition.

*Original Proceeding in Mandamus.*

THE opinion, filed at the session of the court in November, 1890, states the material facts.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff.

*Shinn & Yeager,* and *Johnson, Martin & Keeler,* for defendants.

The opinion of the court was delivered by

HORTON, C. J.: This is an action in *mandamus*, to compel the officers of Augusta township to issue $15,000 of town-

ship warrants, or scrip, voted to aid in the construction of the Chicago, Kansas & Western Railroad, in pursuance of a subscription made by the township under the act entitled "An act to enable counties, townships, and cities to aid in the construction of railroads, and to repeal § 8 of chapter 39 of the laws of 1874," which took effect February 29, 1876, and amendments thereto.   In pursuance of an order of the board of county commissioners, subscription was made by the county clerk of Butler county on behalf of the township, upon the 21st day of January, 1887.   The condition upon which the warrants were to be issued as contained in the petition and order, is in the following language:

"And when said railroad company shall have built or caused to be built, and have in operation with cars running thereon, by lease or otherwise, its said railroad from the city of Augusta at or near the present depot of the Florence, El Dorado & Walnut Valley Railroad to Mulvane, at or near the city of Mulvane, Sumner county, Kansas, on or before the 31st day of July, 1887, it shall be entitled to demand and receive the sum of $15,000 of the warrants of said Augusta township," etc.

To the alternative writ the defendants answered, alleging that —

"The plaintiff never built its road to or from the city of Augusta, nor to or from a point near the depot of the Florence, El Dorado & Walnut Valley Railroad, and that the plaintiff did not complete its road on or before July 31, 1887."

The plaintiff claims to have performed the conditions upon which it was to become entitled to the township warrants or scrip under the terms of the petition, order, and subscription. The Chicago, Kansas & Western Railroad joins the track of the Florence, El Dorado & Walnut Valley Railroad 111½ feet south of the city limits of Augusta, and 139½ feet from the intersection of the southern line of the city by the Florence road.   There was a mill between the point where the Chicago, Kansas & Western Railroad joined the Florence road and the city, and there was no practicable way of extending the road directly south to the city except over the ground

occupied by the mill. The depot of the Florence Railroad Company is within the city of Augusta, and is used by the Chicago, Kansas & Western Railroad Company, for its trains and cars, from where it intersects that road to the depot. The first train of the Chicago, Kansas & Western Railroad Company left Augusta for Mulvane on Saturday, July 30, 1887, and returned the same day. On July 31 the train ran upon orders from the train dispatcher of the company, and on that day the printed time-card of the road was issued. Since then the road has been in operation for freight and passengers.

The principal contention of the defendants is, that the railroad company never built any road from the city of Augusta, nor from or near the depot of the Florence railroad to Mulvane, and therefore never complied with the condition of the subscription made by the township. Nothing was submitted to the voters of Augusta township, by the order of the board of county commissioners, about the building or maintaining a depot, or other terminal facilities, in Augusta. The subscription was made by the voters to aid in the construction and operation of a railroad from Augusta to Mulvane. The language of the proposition voted upon was that the railroad company "Shall have built, or caused to be built, and have in operation with cars running thereon, by lease or otherwise, its railroad from the city of Augusta, at or near the present depot of the Florence, El Dorado & Walnut Valley Railroad, to Mulvane." In fact, on July 31, 1887, the Chicago, Kansas & Western Railroad Company had built and in operation, with cars running thereon, by lease or otherwise, its railroad from the city of Augusta, at or near the depot of the Florence road to Mulvane.

It would be of no special benefit to the township, or the city of Augusta, or the people of either the township or city, that the Chicago, Kansas & Western Railroad should join or intersect the Florence road a few feet further north, or just within the city limits. If the petitioners or voters of the township expected the Chicago, Kansas & Western Railroad

Company to build a separate road or track to a point within the city of Augusta, the petition and order should have been more specific upon this point.   The Chicago, Kansas & Western Railroad has such an arrangement with the Florence railroad, which it intersects near the city of Augusta, that the running of its trains into the city for a short distance over that road fully accommodates the people of its own line, as well as if its track had been extended into the city, at or near the southern limit thereof.   We are therefore of opinion that the railroad company did not forfeit its right to the township warrants or scrip, merely by the fact that after it reached within 111½· feet of the city of Augusta it intersected the Florence railroad and used its road, by lease or otherwise, into the depot within the city limits.  (*People, ex rel., v. Holden,* 82 Ill. 93, 103, 104; *The State, ex rel., v. Town of Clark,* 23 Minn. 422, 427, 428; *S. & V. Rld. Co. v. Stockton,* 51 Cal. 328; *Hodgeman v. St. P. & C. Rld. Co.,* 23 Minn. 153.)

When the road was constructed from Mulvane to within a few feet of the city limits of Augusta, and there joined the Florence road and ran its trains and cars for a few feet over the track of that road into the depot within the city limits of Augusta, there was a substantial compliance with the proposition submitted.   Any railway company organized under the laws of this state may lease the road and appurtenances of any other railway company, when the road so leased shall thereby become, in the operation thereof, a continuation and extension of the road of the company accepting the lease.  (*A. T. & S. F. Rld. Co. v. Fletcher,* 35 Kas. 236.)

Upon the trial, in support of the allegations of the answer that the road was not built and in operation on July 31, 1887, evidence was offered to show that upon that day some of the ties of the road were not spiked to the rails; that some of the culverts and short bridges consisted of cribbing and timbers temporarily piled up to support the track; that the road was not "surfaced" or "ballasted," and that a portion of the bolts intended to attach the rails to the fish-plates were not screwed up properly.   During the argument, however, the alleged

non-completion of the road on or before the 31st of July, 1887, was virtually abandoned.

Counsel for the defendants, among other things, said:

"We are not disposed to take the time of either ourselves or the court to analyze or comment on the testimony on this branch of the case. The fact that these things were not done on or before the exact time designated, never constituted the real grievance of the township against the plaintiff. If the plaintiff had complied with the conditions of the contract in other and more important respects, the township would have cheerfully overlooked a little delay. The delay to complete that part of the road which the plaintiff actually built, we can forgive. But the undeniable fact that the plaintiff never built any railroad from the city, nor from, at, or near the depot, we insist on as an end to plaintiff's claim."

If the alleged non-completion of the road were now insisted upon, it could not be said, upon the evidence produced, that the road was not built and in operation, with cars running thereon, by lease or otherwise, on the 31st of July, 1887. It was not at that date constructed perfectly in every respect, but it had been so far built and in operation that it might be properly and regularly used for the transportation of freight and passengers. (*Railroad Co. v. Towner*, 41 Kas. 72; *Railroad Co. v. King*, 35 N. W. Rep. 705; *Railroad Co. v. Schewe*, 45 Iowa, 79; *Ogden v. Kirby*, 79 Ill. 555; *Tower v. D. L. & L. M. Railroad Co.*, 34 Mich. 328; *Stowell v. Stowell*, 45 id. 364.)

We have not referred to the oral promises of the plaintiff, which were alleged in the return to the alternative writ, and supported to some extent by the evidence, because these allegations in the return upon motion were stricken out, and it seems to be admitted by all parties that these oral promises count for nothing.

The peremptory writ of *mandamus* as prayed for will be allowed.

All the Justices concurring.