The Southern Kansas & Panhandle Railroad Company v. W. H. Towner *et al.*

1. Cases, *Followed.* *A. T. & S. F. Rld. Co. v. Davis,* 34 Kas. 209, and *C. K. & W. Rld. Co. v. Comm'rs of Stafford Co.,* 36 id. 121, followed.

2. Case, *Distinguished.* *M. K. & C. Rly. Co. v. Thompson, Mayor,* 24 Kas. 170, distinguished.

3. Railroad, *Built by Duly-Organized Corporation.* The evidence in this case considered, and the plaintiff *held* to be a legally organized corporation under the laws of the state, and the railroad built in the county of Clark to Ashland and Englewood, in 1887 and 1888, to have been constructed by it.

4. Railroad Company, *When Entitled to County Bonds.* Bonds were voted by Clark county to the plaintiff — a railroad company — in payment of its subscription to its capital stock, upon the condition, among others, that the railroad company should receive the bonds when its road was "built of standard gauge, and completed as first class, and in operation by lease or otherwise." *Held,* That to entitle the plaintiff to receive the bonds of the county, its road, if constructed according to the terms of the contract, need not have been perfect in every respect at the prescribed date for its completion, but it should have been completed and in operation at that date, in such a manner that it might be properly and regularly used for the purpose of transporting freight and passengers.

5. Stock — *Subscription — Conditions Complied with.* Upon the evidence introduced in this case, *held,* that the plaintiff — a railroad company — in the construction and operation of its road in Clark county had substantially complied with the terms and conditions of the proposition submitted to the qualified electors of the county for the subscription of stock and the issue of bonds to the company.

6. Railroad, *Sale of; County, Not Released from Subscription.* The proposition was submitted to the qualified electors of Clark county to subscribe for stock in the railroad of plaintiff, and issue the bonds of the county in payment therefor, upon the condition, among others, that the railroad should be completed and in operation in the county, by lease or otherwise, from a connection with existing lines of road in the state, having direct and continuous lines of connection to the Missouri river, and also conditioned that the acceptance of the bonds issued in payment of the stock should be held and taken as a covenant binding upon the railroad company, its *lessees* or assigns, to maintain and operate said line of road, by lease or otherwise, over its route for the term of ninety-nine years. *Held,* That an agreement by the railroad company, executed after the subscription of the

county, to sell and transfer its road after it was completed, in order to obtain money for its construction, did not discharge or release the county from the payment of its subscription.

### Original Proceeding in Mandamus.

AN alternative writ was allowed in this case on the 25th day of February, 1888, commanding the defendants to issue in payment for a like amount of the capital stock of the Southern Kansas & Panhandle Railroad Company, one hundred and twenty-one bonds of $1,000 each, and one bond of the amount of $300, of the county of Clark, payable to bearer thirty years after date, and bearing interest at the rate of six per cent. per annum, with proper coupons thereon; and requiring the defendants to deliver the same to the Southern Kansas & Panhandle Railroad Company; and failing so to do, requiring them to show cause for their refusal, on or before the 16th day of March, 1888. The return, which was filed on the 15th day of March, 1888, set up the election notice and the proceedings thereunder, and also the subscription of the capital stock of the railroad company. The petition for the election was as follows:

"To the Honorable Board of County Commissioners of Clark County, Kansas: We, the undersigned, your petitioners, being resident tax-payers and legal voters of the said county and state, respectfully petition your honorable body to submit to the qualified electors of Clark county, Kansas, for their acceptance or rejection at a special election to be ordered by your honorable body under and in pursuance of the laws of the state of Kansas, and an act entitled 'An act to enable counties, townships and cities to aid in the construction of railroads, and to repeal § 8 of chapter 30 of the laws of 1874,' which took effect February 26, 1876, and an amendment thereto, the following proposition, with the terms and conditions herein specified, to wit: Shall the county of Clark, in the state of Kansas, subscribe for fourteen hundred shares of one hundred dollars each of the capital stock of the Southern Kansas & Panhandle Railroad Company; one hundred and forty bonds of said county of the enumeration of one thousand dollars each, said bonds to be payable to bearer at the fiscal agency of the state of Kansas in New York City, thirty years after the date

thereof, bearing interest at the rate of six per cent. per annum, payable annually, for which interest coupons shall be attached, payable at the fiscal agency aforesaid. This subscription of stock and issue of bonds to be upon the following conditions, namely: As soon as said proposition shall be determined in the affirmative by a canvass of the votes cast at said election, the board of county commissioners of said county of Clark, for and in behalf of said county, shall order the county clerk to make, and the county clerk shall make, said subscription in the name of said Clark county for said fourteen hundred shares of capital stock of said railroad company; and when the railroad of said railroad company shall be built of standard gauge, and completed as a first-class road, and in operation by lease or otherwise from a connection with existing lines of road in the state of Kansas, having direct and continuous lines of connection from the Missouri river to the city of Ashland in said Clark county, the Southern Kansas & Panhandle Railroad Company shall receive fifty thousand dollars of said bonds, and issue five hundred shares of stock therefor; and when completed and in operation to the town of Englewood, or to the west line of said county, said Railroad Company shall receive an additional ninety thousand dollars of said bonds, and issue therefor nine hundred shares of its stock; provided, not more than four thousand dollars per mile of said bonds shall be issued for each mile of road so constructed in said county. The said board of county commissioners shall cause such bonds, with interest coupons attached as aforesaid, to be issued in the name of said county of Clark, and shall deliver the same to said railroad company on delivery or tender to the treasurer of said county by said railroad company of certificates for its shares of fully paid-up capital stock of said railroad company, equal in amount with said bonds, dollar for dollar; provided, said railroad shall be built and completed and in operation, by lease or otherwise as aforesaid, with freight and passenger depots or stations established ready for business, within three-fourths of one mile of the center of the city of Ashland, in said county of Clark, on or before the 31st day of December, 1887, and to the west line of said county, or to the city of Englewood, on or before the first day of September, 1888.

"The acceptance of said bonds, legally voted and tendered to said railroad company under this proposition, shall be held and taken as a covenant binding upon said railroad company, its lessees or assigns, to maintain and operate said line of rail-

road by lease or otherwise, over the route aforesaid, for the term of ninety-nine years from the first of September, 1888. The form of ballot to be used at said election shall be: 'For the subscription of stock and issue of bonds to the Southern Kansas & Panhandle Railroad Company,' and 'Against the subscription of stock and issue of bonds to the Southern Kansas & Panhandle Railroad Company.'"

The canvass of the returns of the election of the 21st day of September, 1886, was in words and figures following:

"Whereas, there was on the 21st day of September, 1886, duly submitted to a vote of the qualified electors of the county of Clark, Kansas, at a special election held for that purpose, a proposition to subscribe for fourteen hundred shares of one hundred dollars each of the capital stock of the Southern Kansas & Panhandle Railroad Company, and in payment therefor to issue to said company one hundred and forty bonds of said county of Clark, of the denomination of one thousand dollars each, upon certain terms and conditions, which shall more fully appear by reference to the order of submission made on the 17th day of August, 1886, by the board of county commissioners of said county, and recorded in commissioners' journal No. 1, at pages 60, 61, 62 and 63; and whereas, the board of county commissioners of said county have duly canvassed the votes cast at said election, and have determined that there were eight hundred and eighteen votes cast in favor of said proposition, and five hundred and ten votes cast against said proposition, said board of county commissioners now therefore determine that said proposition was duly carried, and do now here order, for and on behalf of said Clark county, the county clerk of said county to make said subscription in the name and for the use of said county of Clark, for fourteen hundred shares of the capital stock of said Southern Kansas & Panhandle Railroad Company.

"Dated at Ashland, this 24th day of September, 1886.

C. B. NUNEMACHER, *Chairman.*

Attest: J. S. MYERS, *County Clerk.*"

In compliance with the above order, the county clerk of Clark county made and delivered to Geo. W. Findley, one of the directors of the Southern Kansas & Panhandle Railroad Company, the subscription, of which the following is a copy:

"Whereas, on the 21st day of September, 1886, at an election held for that purpose, a certain proposition was submitted to the legal voters of the county of Clark, state of Kansas, as

to whether said Clark county should subscribe the sum of one hundred and forty thousand dollars to the capital stock of the Southern Kansas & Panhandle Railroad Company, and issue in payment therefor bonds of said Clark county in the sum of one hundred and forty thousand dollars in accordance with the terms of said proposition; and whereas, at a meeting of the board of commissioners of the county of Clark, upon the 24th day of September, 1886, for the purpose of canvassing the returns of said election, it was ascertained and declared by said board that said proposition had been legally carried, and said board thereupon, for and in behalf of said Clark county, ordered the county clerk of said county to make said subscription, and which order is entered in commissioners' journal No. 1, at page 65, of the proceedings of said board: now, therefore, in consideration of the above-recited premises, I, J. S. Myers, county clerk of the county of Clark, in and for the state of Kansas, do hereby, in the name of said Clark county, subscribe for fourteen hundred shares of the capital stock of the Southern Kansas & Panhandle Railroad Company, of the par value of one hundred dollars per share, the same to be paid for in the bonds of said Clark county, which shall be issued to said railroad company, in accordance with the terms and conditions of said proposition above referred to.

"Dated this 24th day of September, 1886.

(Seal.)                J. S. MYERS,
*County Clerk of Clark County, State of Kansas.*"

The return of the defendants to the alternative writ denied under oath that the Southern Kansas & Panhandle Railroad Company is a corporation duly incorporated and organized under and by virtue of the laws of the state of Kansas; and also alleged that the railroad company had not performed its contract, had not built the kind of road contracted for, had not built its road within the time specified in the contract, had not built the road between the terminal points indicated by its charter, had permitted its road to be built by another company, and finally, had sold out its road to another company. Therefore the defendants contend that the plaintiff cannot recover. Trial had at the December sitting for 1888.

*Geo. R. Peck* and *A. A. Hurd,* for the railroad company.

*Webb, Campbell & Spencer,* and *S. A. Parshley,* county attorney, for Clark county.

The opinion of the court was delivered by

HORTON, C. J.: The principal questions for decision in this case are: First, is the Southern Kansas & Panhandle Railroad Company an existing corporation of the state? Second, if an existing corporation, was the railroad which it is admitted was built in Clark county constructed by said railroad company? Third, if constructed by said railroad company, then was the road constructed in accordance with the terms and conditions of the proposition under which the subscription to the capital stock of the company was made? Fourth, has said company by any transfer of its road discharged or released Clark county from the payment of its subscription to the capital stock of the company?

The first two questions are easily answered. The Southern Kansas & Panhandle Railroad Company filed its charter on the 28th day of July, 1886. The directors of the company appointed for the first year were E. M. Hewins, of Cedarvale, Kas.; Geo. D. Thompson, Harper, Kas.; Geo. W. Findley, Fort Scott, Kas.; John P. Jones, Kingman, Kas.; Wm. M. Whitelaw, Kingman, Kas.; S. S. Baker, Kingman, Kas.; F. R. Gammon, Topeka, Kas.; Arthur Gorham, Kinsley, Kas.; A. Watson, Greensburg, Kas. The subscription of Clark county to the capital stock of the company was made September 24, 1886, and on the same day W. B. Strong subscribed for 3,000 shares. Subsequently each director subscribed for one share. On February 4, 1887, E. M. Hewins was elected president of the company, A. Watson, vice president; Geo. D. Thompson, secretary; and John P. Jones, treasurer. At that meeting by-laws were adopted for the company. On October 20, 1887, at a special meeting of the directors of the company, held at Topeka, a contract was entered into with the Chicago, Kansas & Western Railroad Company for the purpose of procuring the necessary funds to build the company's line of railroad in Clark county. It also appears from the proceedings as recorded in the office of the secretary of the company, that the board of directors adopted the line and

right-of-way of the road of the company through Clark county,
as surveyed and reported by A. A. Robinson, as chief engi-
neer, and also approved maps of said survey for filing in the
office of the secretary of the interior, in order that the com-
pany might obtain the benefits of the act of congress, ap-
proved March 3, 1875, entitled "An act granting to railroads
right-of-way through the public lands of the United States."
On the 8th of November, 1888, the officers of the company
were W. B. Strong, president; G. F. Parmelee, vice-president;
E. Wilder, secretary and treasurer; G. L. Gooding, assistant
treasurer; C. S. Tuckerman, assistant secretary; J. T. White-
head, comptroller and general auditor; A. A. Robinson, gen-
eral manager and chief engineer; H. C. Clements, auditor.

Under the provisions of the statute, the existence of a cor-
poration dates from the time of the filing of its charter.
(Comp. Laws of 1885, ch. 23, §10; *Railroad Co. v. Comm'rs
of Stafford Co.*, 36 Kas. 121.)    The fact that nearly all of the
persons who are the present officers of the South-
1. Cases, followed.
ern Kansas & Panhandle Railroad Company are
also officers in both the Atchison, Topeka & Santa Fé and the
Chicago, Kansas & Western Railroad companies, does not
militate against or affect the existence of the former company.
(*Railroad Co. v. Davis*, 34 Kas. 209.)    All of the moneys
paid and services rendered by the Atchison Company for the
Southern Kansas & Panhandle Railroad Company in the con-
struction of its road through Clark county or otherwise, were
evidently paid and rendered in anticipation of the subsequent
agreement entered into between the Chicago, Kansas & West-
ern Railroad Company and the Southern Kansas & Panhandle
Railroad Company for the sale and conveyance of the road for
the considerations therein named.    The Southern Kansas &
Panhandle Railroad Company, however, was and is an inde-
pendent corporation; the Chicago, Kansas & Western Rail-
road Company was and is a separate corporation; and the
Atchison, Topeka & Santa Fé Railroad Company was and is
another corporation.    The latter company is the parent com-
pany, operating a long line of road in the state, and assisted

the construction of the other roads as auxiliaries or feeders. The road in Clark county was constructed in the name of the Southern Kansas & Panhandle Railroad Company, and the title to its right-of-way is in that company. At one time, a right-of-way was condemned in Clark county in the name of the Chicago, Kansas & Western Railroad Company. Subsequently, however, a second condemnation was made in the name of the Southern Kansas & Panhandle Railroad Company. From the evidence presented, it necessarily follows that the Southern Kansas & Panhandle Railroad Company was a legally organized and existing corporation under the laws of the state at the time of the submission of the proposition and subscription to the capital stock of the company by Clark county, and that the railroad subsequently built in that county was constructed by this company.

The next question for consideration is, whether the road was constructed in accordance with the terms and conditions under which the subscription was made. The proposition submitted to the qualified electors for Clark county provided for the issuance of $50,000 of bonds when the road should be completed and in operation, "by lease or otherwise, from a connection with existing lines of road in the State, having direct and continuous connection with the Missouri river to the city of Ashland;" and the proposition further provided, "that the railroad should be completed and in operation, by lease or otherwise, with freight and passenger depots or stations established ready for business, to within three-fourths of one mile of the center of the city of Ashland, in said county of Clark, on or before the 31st day of December, 1887." The evidence clearly shows that the road was built and completed, with a freight and passenger depot or station, ready for business, near the city of Ashland, upon the first line established by the company, several days prior to December 31, 1887; that it passed south of the city of Ashland, running east and west on a direct line, and considering the city of Ashland as its corporate limits were when the proposition for taking stock in the company was submitted,

4. Railroad company, when entitled to county bonds.

and when the subscription of Clark county was made, the road as constructed was a little more than 300 feet outside of the three-fourths of a mile limit.   When the road was finished, the boundaries of the city of Ashland had been so extended as to bring the railroad and depot within three-fourths of a mile of the center of the city.   After the road had been built upon the first line established near the city of Ashland, it was then ascertained by the company that the road, with its freight and passenger depot, was not within three-fourths of a mile of the geographical center of the city of Ashland as it existed on the date of the subscription, and that possibly objection would be made on that account to the payment of the subscription by the county.   Thereupon the company proceeded at once to change its route for about 1,400 feet, and to construct its road so as to be within the three-fourths-mile limit, and also proceeded to build a new depot more than 300 feet north of the one first located near Ashland.   According to the testimony produced on the part of the railroad company, it appears that the line of the road, upon the new route or location, was completed and in operation, with a freight and passenger depot, within three-fourths of a mile of the center of the city of Ashland as originally laid out and platted, on December 31, 1887.   On behalf of the defendants several witnesses testified that they examined the new or changed track on the first of January, 1888, and that it was then in an unfinished condition, and that passenger and freight trains could not pass around the circle or new track without great difficulty, on account of the curve of the road.   While the evidence is conflicting, all of it tends to show that the company was acting in the best of faith, and diligent in the performance of its duties under the terms of the subscription.   In order to get to a point within three-fourths of a mile of the center of the original corporate limits, it was necessary to build the road curved in the manner in which it was built.   Large sums of money were paid to place the road and depot within the required limit on the last days of December, 1887, and if the citizens and city authorities of Ashland had not interfered the

road would have been constructed within the limit in a straight instead of a curved line. The only piece of road complained of is 1,400 feet east and west. Taking all of the evidence together, it seems to us that there was a substantial compliance on the part of the company with the terms of the contract of subscription.

In *Brocaw v. Comm'rs of Gibson Co.*, 73 Ind. 543, the requirement was that the railroad should be completed prior to receiving any money. It was held in the case "that it was not meant thereby that the road should be perfect in every respect, but that it should be so far completed that it might be properly and regularly used for the purpose of transferring freight and passengers." In *Freeman v. Matlock*, 67 Ind. 99, it was decided "it was not necessary that the road should be perfect and finished in every particular, and its track well ballasted, but that the road should be so far completed on its located and established line that the cars might have been and were run over it with reasonable regularity."

Counsel cite the case of *Railway Co. v. Thompson*, 24 Kas. 170, and claim that the decision is decisive against the plaintiff. In that case, time was expressly made of the essence of the contract. The contract between the Memphis, Kansas & Colorado Railway Company, and the city of Parsons, instead of leaving the manner of construction and the extent of the equipment of the road an open question, distinctly provided in detail how it should be constructed and equipped. It prescribed that the road-bed should have 2,640 ties per mile, the iron for the rails to be of good quality and to weigh not less than 30 pounds per yard, with fish-plate joints; the bridges to be all constructed in a good and substantial manner; the bridge over the Neosho river to be a Howe truss not less than 100 feet span, with proper approaches; the maximum grade not to exceed 60 feet to the mile, etc. It was admitted in the case that from the Neosho river to Parsons — a distance of nine miles — the road was unfinished; that it was not fully tied or spiked; and that the bridge over the Neosho river was incomplete. It was also shown that the grade of the road

did not comply with the specifications. Within the terms of
the contract, it was properly held that the road was not com-
pleted and in operation to the city of Parsons within the time
prescribed. We agree with all decided in *Railway v. Thomp-
son*, supra; but the proposition submitted to the tax-payers of
2. Case, distin-guished. Clark county differed so materially from the prop-
osition submitted to the tax-payers of the city of
Parsons, that the decision cited does not govern in this case.
Counsel claim also, that the charter of the railroad company
was a part of the proposition submitted to the tax-payers of
Clark county, and that the road which was constructed in that
county is not the road embraced within the terms of the char-
ter. The line of this road as constructed in Clark county is
described as follows: "Commencing at the east line of said
county, thence running westerly to the town of Ashland,
thence through Ashland southwesterly to the town of Engle-
wood, in said county of Clark." The lines of road defined in
the charter are as follows:

"No. 1. Beginning at the most desirable point at the east
or north line of Pratt county, thence in a westerly direction,
by the most available route, through the counties of Pratt,
Kiowa, Comanche, Ford, Clark, Meade, Seward, Stevens, and
Morton, to the west line of the state of Kansas.

"No. 2. Leaving the said line No. 1 at the most available
route, in a southerly direction, through the counties of Kiowa,
Comanche, and Clark, to the south line of the state of Kansas.

"No. 3. Leaving the said line No. 1 at the most desirable
point in Ford, Clark or Meade county, thence by the most
available route, in a southerly direction, through the counties
of Ford, Clark, and Meade, to the south line of the state of
Kansas."

It clearly appears from the terms of the charter, that the
railroad company had ample authority to construct its road
in Clark county; but it is contended that its road should have
commenced on the east or north line of Pratt county. The
conditions contained in the proposition to the tax-payers of
Clark county, which became a part of the conditions of the
subscription, are as follows:

"And when the railroad of said railroad company shall be
built of standard gauge, and completed as a first-class road,
and in operation, by lease or otherwise, from a connection with
existing lines of road in the state of Kansas, having direct and
continuous connection with the Missouri river to the city of
Ashland, in said Clark county, the Southern Kansas & Pan-
handle Railroad Company shall receive fifty thousand dollars
of said bonds, and issue five hundred shares of stock therefor;
and when completed and in operation to the town of Engle-
wood, or to the west line of said county, said railroad company
shall receive an additional ninety thousand dollars of said
bonds, and issue therefor nine hundred shares of its stock;
provided, not more than four thousand dollars per mile of
said bonds shall be issued for each mile of road so constructed
in said county.

"The said board of county commissioners shall cause such
bonds, with interest coupons attached as aforesaid, to be issued
in the name of the said county of Clark, and shall deliver the
same to said railroad company on delivery or tender to the
county treasurer of said county by said railroad company of
certificates for its shares of fully paid-up capital stock of said
railroad company equal in amount with said bonds, dollar for
dollar; provided, said railroad shall be completed and in oper-
ation, by lease or otherwise as aforesaid, with freight and pas-
senger depots or stations established ready for business, within
three-fourths of one mile of the center of the city of Ashland,
in said county of Clark, on or before the 31st day of Decem-
ber, 1887, and to the west line of said county, or to the city
of Englewood, on or before the first day of September, 1888.
The acceptance of said bonds legally voted and tendered to
said railroad company under this proposition, shall be held
and taken as a covenant binding upon said railroad company,
its *lessees* or *assigns*, to maintain and operate said line of rail-
road, by lease or otherwise, over the route aforesaid for the
term of ninety-nine years from the first day of September,
1888."

While the road was not built from the east or north line
of Pratt county west, yet the road which was constructed by
the company through Clark county, and for which
bonds are now claimed, was within the time pre-
scribed, in operation, by lease or otherwise, from
a connection with existing lines of road in the state of Kan-

sas, having direct and continuous connection to the Missouri river, and afforded the citizens and tax-payers of that county the railroad facilities desired. Of course a railroad company has no authority to construct a road outside of the territory or designated points embraced within its charter; but in this case the road was constructed within a county named in the charter and within the points in that county designated in the proposition submitted to the qualified electors. The road connected with an existing line through Pratt county, entering Pratt county a little below the east line, instead of at the east or north line. The railroad, therefore, was not constructed in violation of the charter of the company, nor in violation of the contract with the tax-payers of Clark county.

3. Railroad, built by duly-organized corporation.

In *Lamb v. Anderson*, 54 Iowa, 190, the township of Newton voted taxes to the Iowa, Minnesota & North Pacific Railroad Company for the construction of its road through that township. Newton in the township was one of the designated points in its charter. The court held that as the railroad company failed to construct its road through Newton in the township, it was not entitled to the taxes voted to it.

In *Winter v. Railroad Co.*, 11 Ga. 438, subsequent to the subscription, the charter of the railroad was changed by the legislature so as to run the road in a different direction from that contemplated in the original charter. This was held to be an essential alteration to the original contract. Other and similar decisions are cited, but they are not in conflict with our conclusion, because, as already stated, the road through Clark county was built by the railroad company within the terms of its charter — not contrary to its charter, nor contrary to the propositions submitted. The road when completed had, with existing lines, a direct and continuous connection to the Missouri river.

The final question is, has the railroad company by the transfer or its agreement to transfer its road, discharged or released Clark county from the payment of its subscription? It appears that on the 26th day of October, 1887, the Southern

Kansas & Panhandle Railroad Company, in order to procure the necessary money to construct its road, entered into a written agreement with the Chicago, Kansas & Western Railroad Company — one of the auxiliaries of the Atchison, Topeka & Santa Fé Railroad Company — to sell and convey to the Chicago, Kansas & Western Railroad ·Company its road in that county, when fully completed. No deed of conveyance has yet been made, and only a contract for sale has been executed. This agreement was entered into, we suppose, under the provisions of the statute. Section 1 of chapter 134, Laws of 1886, which was in force at the time the proposition to take stock in the railroad company was submitted to the tax-payers of Clark county, reads as follows:

"Any railroad company in this state existing under general or special laws may sell or lease its road to another railroad company organized under the laws of this state," etc.

Section 1 of chapter 186, Laws of 1887, amended chapter 134, Laws of 1886; but it also authorizes—

"Any railroad company in this state to sell the whole or any part of its railroad constructed or to be constructed, or any interest therein, together with all the property, rights, privileges and franchises thereto pertaining, to any railroad company organized or existing under the laws of this state."

We need not at this time pass upon the constitutionality of these statutes, or determine whether the agreement to sell above referred to is valid or not. Of course if there has been no valid sale of the road, the objection we are now considering amounts to nothing. If, however, these statutes are valid, and a sale has been made in accordance with their provisions, we do not think that Clark county can complain. Chapter 134, Laws of 1886, being in force at the time of the submission of the proposition, and also at the date of the subscription, it necessarily follows that the proposition was accepted and the subscription made with a knowledge of its terms, and therefore that the company had the authority to make a sale of its road to another railroad company connected with it, in accordance with the terms and provisions of the

6. Railroad, sale of; county, not released from subscription.

statute. In addition to this, it is apparent from the proposition submitted to the tax-payers that a lease of the road in Clark county, and possibly a sale thereof, was in contemplation at the time the vote was taken, because it is expressly provided "that the acceptance of said bonds legally voted and tendered said railroad company under this proposition shall be held and taken as a covenant binding upon said railroad company, its *lessees or assigns*, to maintain and operate said line of railroad by lease or otherwise for the term of ninety-nine years." Considering the terms of the proposition submitted, it is clear that it was accepted by the tax-payers of Clark county for the purpose of having the railroad built through their county at the points designated and within the time named, so that they might have railroad privileges in their county, and also direct railroad connection through existing lines to the Missouri river. The general object for which the subscription was made has been accomplished; the road has been built, the railroad privileges furnished, and if the anticipated benefits or profits from the stock on account of its depreciated value are not likely to be realized, it is because the proposition submitted to the qualified electors was not more carefully guarded, or because the statutes of this state are more liberal to railroad companies concerning mortgages, leases and sales than the statutes of many other states.

Our attention is directed to *Manning v. Mathews*, 66 Iowa, 665, and *Blunt v. Carpenter*, 68 id. 265, as conclusive that if the Southern Kansas & Panhandle Railroad Company sold its road or made a contract to sell its road, it cannot collect its subscription. The statute of Iowa differs widely from ours. Under the provisions of our statute, railroads may be mortgaged without limit, consolidated, leased, or sold. Whether these liberal provisions of the statute are wise or not, it is not within the province of this court to determine. That is a matter for the legislature. In Iowa a railroad cannot be incumbered beyond a prescribed limit. Chapter 123, acts of the sixteenth general assembly of that state, provides that the tax-payers shall receive the stock of the railroad company building

the road for the taxes paid by them; and § 6 of said chapter 123 further provides:

"The board of directors of any railroad company receiving taxes voted in aid thereof under the provisions of this act, or those members thereof, or either of them, who shall vote to bond, mortgage, or in any manner incumber said road to an amount, if the same be a railroad of three-feet gauge, to exceed the sum of $8,000 per mile, and if of the ordinary four feet eight and one-half inch gauge, to exceed the sum of $16,-000 per mile, not including in either case any debt for ordinary operating expenses, shall be liable to the stockholders or either of them for double the amount, estimated at its par value, of the stock by him or her held, if the same should be rendered of less value or lost thereby."

It is expressly stated in the decisions cited from Iowa, "that it is the purpose of the statute of that state to preserve the existence of the road in the corporation building it, and thus preserve the tax-payers' interest therein." As we have no similar statute, the Iowa decisions are not of controlling authority.

Upon the evidence produced, it is ordered that the peremptory writ be issued as prayed for.

All the Justices concurring.