THE GARDEN CITY, GULF & NORTHERN RAILROAD COMPANY, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SCOTT *et al.*, *Defendants*.

No. 16,909.

SYLLABUS BY THE COURT.

1. CONTRACTS—*Time of Performance—Substantial Compliance with Conditions—Railroad-aid Bonds—Completion of Road.* In mandamus to compel a board of county commissioners to subscribe for stock in a railroad company and issue bonds in aid of its construction, where the defense relied upon was the failure to complete the road within the time stated in the proposition submitted to the voters, it is *held*, upon the evidence, that the plaintiff company had substantially complied with the terms and conditions of the contract and is entitled to have the subscription made and the bonds issued.

2. SPECIAL ELECTION—*Bonds—Irregularities in Sheriff's Proclamation.* The sheriff's proclamation calling a special election to vote upon a railroad-bond proposition contained in the first publication a number of errors in the preamble of the notice. The notice itself correctly stated the date of the election, as did the notices posted by the sheriff, and the errors in the published notice were corrected in the subsequent publications. *Held*, that the defects were merely formal and not sufficient to render the election void.

3. ——— *Statutory Provision for "Second" Election Does Not Prevent Subsequent Elections.* In section 7027 of the General Statutes of 1909 (Laws 1887, ch. 183, § 1), authorizing the calling of a second election to vote bonds in aid of a railroad upon a petition of a majority of the legal voters, the word "second" means "another," or subsequent, election, and the authority of a county, township or city to hold bond elections is not exhausted upon the holding of a first and a second election.

Original proceeding in mandamus.   Opinion filed. June 11, 1910.   Peremptory writ allowed.

STATEMENT.

THIS is an original proceeding in mandamus to compel the defendants to subscribe for certain stock of the plaintiff and to issue railroad-aid bonds in exchange therefor.   The county clerk is ready and willing to issue the bonds, and has filed a disclaimer.   The board of county commissioners has answered to the alternative writ, setting up as a defense that the railroad company failed to comply with the conditions of the contract under which the bonds were voted, and the further defense, with respect to Valley township, that the election there was irregular and void.

The plaintiff is a corporation organized under the laws of the state of Kansas and empowered to build a standard-gauge railroad through Scott and other counties of the state.   The bonds which the plaintiff seeks. to have issued were voted at a special election in Scott and Valley townships, in Scott county, on the 28th day of December, 1909.   The proposition submitted to the voters of Scott township provided that the township would subscribe for stock to the amount of $2000 per mile, and issue its bonds in exchange therefor, the condition being that the railroad company should build a. standard-gauge railroad into Scott township from a. point on the south line thereof on a direct line north to Scott City, with a station, stockyards, switch tracks and shipping facilities at Scott City; that the railroad. should be built and ready for the operation of engines and cars over the same from a point on the south line of the township to Scott City on or before the 31st day of December, 1909; and also contained the express condition that the railroad company should construct and. maintain railroad crossings on each and every section. line crossed by the railroad within the limits of Scott. township, and that the road should be completed from.

Railroad Co. v. Scott County.

Scott City to Garden City on or before December 31, 1909.

It is conceded that the election in Scott township was regular in all respects, and that 106 votes were cast for, and 12 against, the proposition. The returns of the election were duly canvassed, and the only objection to issuing the bonds of Scott township is the alleged noncompliance on the part of the company with the conditions of the contract. It is claimed that on December 31, 1909, the railroad was not completed and did not at the time have facilities for the transaction of railroad business; that the depot at Scott City was not completed and was a building only twelve feet by ten feet in dimensions, open on one side, with no furniture or supplies of any kind, with no agent in charge, and that it was not a depot or station within the meaning of the terms of the contract; that the company had no sidetracks, switch tracks or stockyards in Scott township at the time the contract expired; and also that no road crossings such as the law requires or the contract contemplated had been constructed in Scott township.

. The conditions in the Valley township proposition were the same as those in Scott township, but the board, in making the order and calling the election in the former, added the following provisions:

"That the terms and conditions upon which said subscription shall be made and said bonds issued and delivered are as follow: That said railroad company, its successors or assigns, shall build a standard-gauge railroad, . . . with a station, depot, switch tracks, stockyards and shipping facilities; that said railroad shall be built and ready for the operation of engines and cars over the same, by or before the 31st day of December, 1909; and that when the railroad of said railroad company shall be built and completed and shall be in operation, under lease or otherwise, . . . with a station, depot, switch tracks, stockyards and shipping facilities, the said board of county commis-

sioners shall cause said bonds, with coupons attached as aforesaid, to be issued."

It is claimed by the defendants that on the 31st day of December, 1909, the road was not built or completed through Valley township as contemplated by the petition and order of the board, that no station or depot had been established, no sidetrack and no stockyards built, and that no road crossings such as are required by law and contemplated by the contract had been constructed within the time limited.

Upon the issues of fact a great deal of testimony has been taken, from which it appears that on December 31, 1909, the railroad company had built a standard-gauge railroad from Garden City to Scott City, into and through Valley and Scott townships, and had extended its line into Scott City to within thirty feet of Main street and about half a block from the depot of the Missouri Pacific railway, the main line of which runs from Kansas City to Pueblo, through Scott City. The plaintiff had on that date constructed about 500 feet of "Y" track in Scott City, which has since been extended so it comprises about 1100 feet of track. It had some trouble operating its cars around the curve from Fifth to Main street on December 31, but finally succeeded in passing over that portion of the track with a construction train. The company has since that date maintained a force of men, from twenty to seventy in number, engaged in work on its track and roadbed in Scott and Valley townships.

On December 30, 1909, the first passenger train, consisting of an engine and two coaches and carrying about seventy-five passengers, ran from Garden City to a point inside the limits of Scott City, and to a point more than half way across the same. Since that date the company has operated two trains each day between Garden City and Scott City, and, on the date the testimony was taken, March 23, 1910, in addition to its

regular trains, had operated one special, two passenger, and three stock, trains.

On December 31, 1909, and since that date, the company has owned and operated three locomotives, two passenger coaches and eleven freight cars on its line between Garden City and Scott City, and in the transaction of its business has also used cars belonging to other railroads. The first freight train operated between the two cities was run on the 28th day of January, 1910, but the passenger trains up to that time furnished freight service. From the time it commenced operations until the testimony was taken the company collected on account of its passenger business from Garden City to Scott City $2742.32, and during the same time earned on account of freight items $4227.93, and had handled 142 carloads of freight. The plaintiff had completed a depot in Scott City on December 31, 1909, and had an agent there on that day selling tickets, but the depot was not equipped with furniture or supplies and evidently was not designed as a permanent office of the company, and no agent was kept there afterward. The company, however, has had the use of the Missouri Pacific depot and the services of the Missouri Pacific agent in the sale of tickets and the handling of freight and baggage. It has also had the use of the Missouri Pacific stockyards. Negotiations between the two companies for the use of the Missouri Pacific stockyards and depot were commenced sometime in December, 1909, but were not put into the form of a written contract until January 12, 1910.

The tracks of the plaintiff company and the Missouri Pacific railway were connected January 15, 1910, so that cars may be taken from one road to the other, and at the time the testimony was taken the plaintiff's road was also connected with the A. T. & S. F. railway at Scott City. No agent has been maintained at the depot of the plaintiff company at Scott City, or at Shallow Water, in Scott township, but during the time since

December 30, 1909, the regular trains of the company have been handled at Scott City from the Missouri Pacific depot, and have also stopped at the depot of the company at Scott City and at Shallow Water for the purpose of taking on or putting off passengers or freight, and no extra charge has been made on account of passengers boarding trains at these points without tickets.

On December 31, 1909, the road crossings in neither township were completed so as to comply with the terms of the contract. The track was laid during the month of December, when the weather was extremely cold and the ground frozen. The first crossings put in were temporary ones and afterward the company proceeded to rebuild them, and at the time the testimony was taken they complied with the requirements of the contracts. One witness testified that the temporary crossings were sufficient for all practical purposes, and that he hauled a load of fifty bushels of cane seed over one in Valley township without any trouble.

In Valley township the road was completed and a depot finished on December 31, 1909. The sidetracks there are 700 feet in length, but were not completed until the 2d day of January, 1910. The stockyards were not completed until sometime in January. There was testimony showing that only a small amount of business is taken on or put off at that station, and that while no agent has been maintained there the men in charge of the train receive and bill all freight received at that point for shipment.

*Albert Hoskinson, Edgar Roberts,* and *A. M. Harvey,* for the plaintiff.

*John S. Dawson,* and *D. A. Banta,* for the defendants.

The opinion of the court was delivered by

PORTER, J.: From the foregoing statement of facts, about which there is no serious controversy, it is apparent that the plaintiff company has substantially complied with the terms and conditions of its contract. The same question has been frequently before the court, and the principle adopted in the decisions is one which has received the approval of courts everywhere. The principle is well stated in section 851a of volume 2 of the second edition of Elliott on Railroads as follows:

"A condition that the road shall be built for use within a specified time is to be reasonably construed, however, and is generally regarded as complied with when the road is built so as to be in as reasonably fit condition and as safe and convenient for the public use as new roads usually are in similar localities."

The following cases are directly in point: *C. K. & W. Rld. Co. v. Comm'rs of Osage Co.,* 38 Kan. 597; *S. K. & P. Rld. Co. v. Towner,* 41 Kan. 72; *C. K. & W. Rld. Co. v. Makepeace,* 44 Kan. 676; *C. K. & W. Rld. Co. v. Comm'rs of Chase Co.,* 49 Kan. 399, 411; *Pontiac, etc., R. R. Co. v. King,* 68 Mich. 111; *The C., D. & M. R. Co. v. Schewe,* 45 Iowa, 79; *Brocaw et al. v. The Board of Commissioners of Gibson County et al.,* 73 Ind. 543; *Freeman et al. v. Matlock,* 67 Ind. 99; *Hunt v. Upton,* 44 Wash. 124.

The defendants rely largely upon the case of *M. K. & C. Rly. Co. v. Thompson, Mayor, &c.,* 24 Kan. 170. There time was expressly made of the essence of the contract, and the details as to the kind and character of the equipment of the road were expressly stipulated and provided for. The case is distinguished from the cases cited supra, in the opinion in *S. K. & P. Rld. Co. v. Towner,* 41 Kan. 72. In the present case the township might have stipulated for a depot at Scott City of a particular kind and dimensions, but in fact it only stipulated for a station. The word "depot" is not men-

51—82 KAN.

tioned in the contract. There is no express provision as to the kind or character of the depot which the company agreed to establish in Valley township, and the evidence shows that the one erected is sufficient for all practical·purposes. Nor does the contract bind the company to maintain an agent at the depot.

The .defendants insist that time is of the essence of the contracts upon which the bonds were voted, and this is true as to some of the conditions named. Wherever the contracts provide that something shall be done by a day named, time is essential. In the proposition submitted to the voters of Scott township the only express provision with regard to time is that "said railroad shall be built and ready for the operation of engines and cars over the same from a point on the south line of Scott township to said Scott City, Kan., on or before the 31st day of December, 1909; . . . that said railroad be completed from Scott City, Kan., to Garden City, Kan., on or before December 31, 1909." It can hardly be seriously claimed that there was not a substantial compliance with these conditions within the time limited. As this court held in *S. K. & P. Rld. Co. v. Towner,* 41 Kan. 72, in order to constitute a substantial compliance with the terms of such a contract the road "need not have been perfect in every respect at the prescribed date for its completion," provided it was ·"completed and in operation at that date, in such a manner that it might be properly and regularly used for the purpose of transporting freight and passengers." (Syllabus.)

The only express provision with regard to time in the Valley township proposition was "that said railroad shall be built and ready for the operation of engines and cars over the same, by or before the 31st day of December, 1909." Immediately following, this language is used:

"And that when the railroad of said railroad company shall be built and completed and shall be in opera-

tion, under lease or otherwise, . . . with a station, depot, switch tracks, stockyards and shipping facilities, the said board of county commissioners shall cause said bonds, with coupons attached as aforesaid, to be issued."

There is much force in the argument of the plaintiff that the last provision quoted should be construed as authorizing the completion of the station, depot, switch tracks, stockyards and shipping facilities within a reasonable time after the 31st day of December, provided the road was built and ready for the operation of engines and cars on or before that date.

In determining whether time is of the essence of the contract courts of equity look further into the intention of the parties to ascertain whether in fact they intended performance by the day named to be controlling. (9 Cyc. 606.) The rule appears to be that time will be deemed of the essence of the contract wherever the benefit to accrue from the consideration materially depends upon a strict performance in point of time. (*St. L. & S. F. Rly. Co. v. Rierson*, 38 Kan. 359.) Thus, where time is not expressly made the essence of the contract it may be held to be so intended from the nature of the contract itself. (9 Cyc. 606; *Kirby v. Harrison et al.*, 2 Ohio St. 326.)

It must be apparent that a court of equity would not be justified in holding that time was of the essence of the contract here, in the sense that the plaintiff was required to have every condition on its part fully complied with and the road completed in every particular by December 31, 1909. A railroad in a sense is never completed; it is constantly undergoing changes and alterations in its track and roadbed. This is especially true of a new road, some portions of which must necessarily be constructed at first in a temporary manner, as occasion requires, and afterward be replaced with more permanent material and construction. Thus, in *C. K. & W. Rld. Co. v. Comm'rs of Chase Co.*, 49 Kan.

399, 411, temporary pile bridges were put in on some portions of the railroad, and later in the same year the company replaced them with iron bridges, but the court held that, notwithstanding the fact that when the first bridges were built the company contemplated putting in a better class of bridges, this did not make the road incomplete as first constructed nor prove that it had failed to meet the requirements of the contract. In the language of the court in *Pontiac, etc., R. R. Co. v. King*, 68 Mich. 111, "it is a matter of common knowledge that much usually remains to be done in completing a railroad track, and in making it safe for regular freight and passenger business, long after the cars have commenced running upon it." (Page 114.) Of course, a colorable compliance, such as laying a temporary track and running an engine and a few cars over it, with the intention to fulfill merely the letter of the contract and procure the issuance of bonds, would not be sufficient, and in such a case the courts will not hesitate to hold that there has not been a substantial compliance. Good faith is required.

There was no demand made for the issuance of the bonds of Scott township until January 31, 1910, at which time the plaintiff had substantially complied with the other conditions of the contract, and its road was equipped "with a station, stockyards, switch tracks and shipping facilities at Scott City." The subsequent completion of the road furnishes conclusive evidence of the good faith with which the plaintiff appears to have attempted to comply with the terms and conditions of its contract, and upon every principle of equity and fair dealing it must be held entitled to its bonds.

In the briefs of the defendants it is urged that the decision of the board of county commissioners to the effect that the conditions precedent to the making of the subscription and issuance of the bonds have not been fulfilled is final and conclusive. In support of this rather startling proposition the cases of the *Board of County*

*Commissioners of Day County v. State of Kansas,* 19
Okla. 375, and *Commissioners of Knox County, Indiana,
v. Aspinwall et al.,* 62 U. S. (21 How.) 539, are cited.
The latter case is frequently referred to as authority for
the proposition that an innocent purchaser of municipal
bonds may rely upon the recitals in the bonds them-
selves as to the performance of the conditions prece-
dent, but is not authority for any such doctrine as the
defendants urge.    In the opinion this language was
used:

"We do not say that the decision of the board would
be conclusive in a direct proceeding to inquire into the
facts previously to the execution of the power, and be-
fore the rights and interests of third parties had at-
tached."  (Page 544.)

The other case cited merely holds that a decision of
the district court of Day county finding that certain
warrants which had been issued by the county com-
missioners were valid is conclusive and binding upon
the county in a suit upon the warrants, as well it might
be, since it was the solemn judgment of a court.

There remains the question whether the election in
Valley township was void for irregularities.    In the
first publication of the sheriff's notice the recitals in
the preamble contained a number of errors.    It gave
the 21st day of September as the date when the petition
was presented and the order made by the board, and
recited that the board ordered that a special election
be held on the 26th day of October when it should have
recited that the election was ordered for the 28th day
of December.    The notice itself gave the correct date
of the election, and the errors of the preamble were
corrected in the subsequent publications.    The notice
which the sheriff posted also gave the date of the elec-
tion correctly.    The defects were merely formal and
not sufficient to render the election void.

Another objection urged is that the election was the
seventh one held in Valley township at which propo-

sitions were submitted by the plaintiff company. It appeared that the seven propositions differed materially in the conditions as to the route and other matters. The statute provides for the calling of bond elections to grant aid to railroads upon the petition of two-fifths of the resident taxpayers, and further provides that a second election may be had upon the petition of a majority of the legal voters. The language of the statute is: "Provided further, that a second election for the same purpose shall not be held unless upon a petition of a majority of the legal voters of such county, township or city." (Laws 1887, ch. 183, § 1; Gen. Stat. 1909, § 7027.) The objection is based upon a narrow, technical meaning of the word "second," which evidently means in this statute another, or subsequent, election. Webster's International dictionary gives "another" as one of the meanings of the word. It is urged that municipalities must not be harassed or badgered by the calling of several elections. The answer is that another election can only be called upon the petition of a majority of the legal voters, and where a majority has petitioned for it no injustice can result in holding the election.

The peremptory writ is allowed.