(67 South. 884)

No. 20516.

SIBLEY, L. B. & S. RY. CO. v. ELLIOTT,
Tax Collector, et al.

(June 29, 1914. On Rehearing, March 8, 1915.)

*(Syllabus by the Court.)*

1. TAXATION ☞196—EXEMPTION—RAILROADS
—"CONSTRUCTED AND COMPLETED."

The words "constructed and completed," as used in article 230 of the Constitution, and as used in the amendment to the Constitution proposed by Act No. 16 of 1904, in connection with the exemption of railroads from taxation, mean substantially the same thing, in both instances, and in neither are they susceptible of the interpretation that a railroad, the construction of which was begun before, or which was completed after, the period or date stated in the article and in the amendment, respectively, is entitled to the exemption therein granted.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 314; Dec. Dig. ☞196.]

2. TAXATION ☞231—EXEMPTION—RAILROADS
—"COMPLETED."

A railroad cannot be said to have been "completed," within the meaning of the amendment to the Constitution granting exemption from taxation to "any railroad or part of railroad that shall have been constructed and completed subsequently to January 1, 1905, and prior to January 1, 1909," where it was built as a logging road, for a particular concern, and, up to the date last above mentioned, had been provided with no equipment that would have enabled it to serve the public, generally, as a carrier of either passengers or freight.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 371–378; Dec. Dig. ☞231.

For other definitions, see Words and Phrases, First and Second Series, Complete.]

Appeal from Eleventh Judicial District Court, Parish of Red River; W. T. Cunningham, Judge.

Action by the Sibley, Lake Bisteneau & Southern Railway Company against W. H. Elliott and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

R. G. Pleasant, Atty. Gen., Harry Gamble, Asst. Atty. Gen., and John F. Stephens, Dist. Atty., of Coushatta, for appellants. W. R. Thurmond, of Kansas City, Mo., and Scheen & Blanchard, of Shreveport, for appellee.

PROVOSTY, J. In this case, the plaintiff railroad company claims that that part of its railroad situated in Red River parish is exempt from taxation under article 230 of the Constitution, as amended by Joint Resolution No. 16, p. 19, of 1904, exempting from taxation for ten years from the date of its completion any railroad "constructed subsequently to January 1, 1905, and prior to January 1, 1909."

We will deal first with that section of plaintiff's road extending from the line of Red River parish to Hall Summit, and next with that section below Hall Summit.

With reference to the first of these sections, plaintiff's witness Wimberly testified that he began doing business at Hall Summit in September, 1904, and that his recollection is that the roadbed was built into Hall Summit in 1903. Plaintiff's witness Walter testified that the roadbed was constructed down to a quarter of a mile below Hall Summit in 1903. And a letter dated January 4, 1904, written to the secretary of the railroad commission by J. W. Martin, general manager of the plaintiff company, was produced by defendant, in which the report is made that five miles of the railroad was completed in Red River parish in 1903. This would comprise this entire first section, and more. The same general manager confirms that statement as a witness by saying that that part of the road was then completed in so far as grade is concerned, but that the rails were not yet laid.

In order to be entitled to the said constitutional exemption, the railroad must not only have been "completed" subsequently to January 1, 1905, but must also have been "constructed" subsequently to that date; i. e., the construction must have begun subsequently to that date. This first section of plaintiff's road had been in large measure constructed at that date, since its roadbed was built, and is therefore not entitled to the exemption.

The second section, from a point about a quarter of a mile below Hall Summit, was begun to be constructed within the exemption period; but whether completed within that period is left doubtful by the evidence. Plaintiff's same witness Walter, whose occupation was to haul logs to and on this section, says that if any freight was hauled on it he does not recall the fact; that about 1911 they hauled some bolts and fertilizer on it in box cars. The general manager testifies that they did not begin to haul freight or passengers on this section of the road until 1909 or 1910, but that he does not know when they began. A railroad that is not yet in a condition for hauling freight cannot be said to be completed within the meaning of the said constitutional exemption.

The judgment appealed from is therefore set aside, and the suit of the plaintiff is dismissed, at plaintiff's cost in both courts.

### On Rehearing.

MONROE, C. J. In the petition with which this suit was begun, plaintiff alleges that 6 miles of its main track and three-fourths of a mile of side track were "constructed and completed" in 1906, and that 2½ miles of its main track were "constructed and completed" in 1907; and that the 6 miles and the three-fourths of a mile are exempt from taxation, because completed subsequently to January 1, 1905, and prior to January 1, 1909, notwithstanding that the construction was begun prior to January 1, 1905; and that the remaining 2½ miles are exempt because they were begun and completed between the two dates last above mentioned.

According to the testimony of Mr. J. W. Martin, who has been plaintiff's general superintendent since 1901, exemption is claimed for 8½ miles of road, of which 4¼ miles should lie between the parish line, to the north, and "Hall Summit," to the south, and the remaining 4¼ miles should lie between Hall Summit and some point to the southward of that village. But, from the same testimony, it would appear that there never were but 3 miles of road below Hall Summit, and that at some time, not definitely stated, plaintiff removed the rails from one of those miles. Beyond that, the witness, though diligently examined and cross-examined upon the subject, persistently declined to fix the date at which the extension of the company's road, below Hall Summit, was operated, or was ready to be operated. We make the following excerpt from his examination by plaintiff's counsel, to wit:

"Q. Approximately how many miles of railroad have you in Red River parish? A. Eight and a half miles, and there is about seven and a half miles of steel now down. Q. Now part of that has been abandoned; part of that was never used? A. Yes, sir. Q. You used it at the time that it was down, but afterwards you stopped using it? A. We took it up to the water station. Q. Originally you had it built below the water station? A. Yes, sir; but the water station was as far as we had occasion to go. We had no territory beyond Hall Summit, and the water station is about two miles below there."

On the cross-examination, counsel for defendants, after trying time and again, to ascertain from the witness at what time, if at all, the road, below Hall Summit, had been operated, asked the question and received the answer as follows:

"Q. Did I understand you to say that you did not begin operations on that last 4¼ miles until 1909? A. I told you that I could not give you the exact date."

Reconsidering the testimony, we are confirmed in the view that the extension below Hall Summit was not completed prior to January 1, 1909.

[1] We are also confirmed in the view, expressed in the opinion heretofore handed down (and the point is conceded by plaintiff's counsel), that the road, from the parish line to Hall Summit, was in process of construction, and had so far progressed that the road-

bed had been graded as early as 1903; and, upon the other hand, our re-examination of the testimony leaves in doubt the question whether a "railroad," within the meaning of the constitutional exemption here claimed, had been completed, between the points mentioned prior to January 1, 1909.

Article 230 of the Constitution of 1898 reads (so far as it need be here quoted) as follows:

"There shall also be exempt from taxation for a period of ten years from the date of its completion any railroad or part of such railroad that may hereafter be constructed and completed prior to January 1, 1904; * * * nor shall the exemption hereinabove granted apply to any railroad or part of such railroad the construction of which was begun and the roadbed of which was substantially completed at the date of the adoption of this Constitution."

The evident purpose of the exemption so declared was not to exempt railroads, the promoters of which had so far committed themselves to their construction in this state as to acquire rights of way and substantially to complete roadbeds, but to encourage enterprises in railroad building not already undertaken, and to induce promoters to build roads which they might not otherwise be tempted to build. Amos Kent & Co. v. Tax Assessor, 114 La. 865, 38 South. 587.

"The framers of that instrument [this court has said, referring to the Constitution of 1898], in order to encourage the construction of new railroads, offered a bonus in the form of an exemption from taxation for ten years." Louisiana & A. R. Co. v. Shaw, 121 La. 1004, 46 South. 997.

It is contended, however, that the policy thus declared was abandoned, and that by the amendment to the Constitution, proposed by Act 16 of 1904 and subsequently adopted, the people of the state, in effect, declared that any road or part of a road in this state, the construction of which may have been completed, save as to what are sometimes called "finishing touches," should be exempt from taxation for ten years from the date at which the "touches" should be added,

provided that the addition should be made between January 1, 1905, and January 1, 1909.

That such is the meaning of the argument now pressed upon the court will be seen from the following excerpt from the latest brief filed herein by plaintiff's counsel to wit:

"It was in the interpretation of this Act 16 of 1904 that the court held that the construction of the roadbed had to begin subsequent to January 1, 1905, but we think that a careful comparison of this act, amending the Constitution of 1898, will convince the court that no such meaning was ever intended, but that the real meaning was that any railroad or part of railroad that was constructed would be entitled to the exemption if it was completed subsequent to that date and prior to January 1, 1909."

On the other hand, plaintiff's general superintendent, being cross-examined in order to ascertain whether the piece of road here in question had been "completed" prior to January 1, 1909, gives it to be understood that a road may be "completed," although the finishing touches are still lacking. Thus we find:

"Q. As a matter of fact, you were not operating a railroad to Hall Summit in 1906? A. It was not built in 1906, but it was built in 1907, but, just when we began to operate, I could not give the date. Q. I understood you, a while ago, to say that you did not finish that until 1909, and on further questioning you said that it had been built in 1907; will you explain how that is? A. You misunderstood; I said we did some work on it after 1907. In 1907 we reported it as finished, and it was practically; there were some finishing touches to be put on it. Q. As a matter of fact, it was not finished until 1909; it was not in a state as being finished? A. You may consider it that way, and you might consider the T. & P. on the other side of the river unfinished, as they might have some good work that they want to put on it. * * * Q. But you did not begin to operate until 1909 or 1910? A. We carried passengers down there after that. Q. You did not carry passengers down there until 1909? A. I don't know when we began; I would not like to put it in testimony."

At another place in his testimony, the witness admits that he wrote to the state board of appraisers on January 9, 1904, saying "five miles of main line [meaning the road from the parish line to Hall Summit] com-

plete in 1903." And he is further interrogated and answers as follows:

"Q. At any time, or anywhere, in this letter, did you advise the state board of appraisers, when you were telling them about the completion of this road, that you only meant that the roadbed had been thrown up? A. I don't find it there, but it is a fact that can be proven very easily. Q. Do you recall [under] what condition you wrote the secretary of the state board of appraisers, stating that to him, the date of the completion of the mileage? A. I presume the first paragraph would tell you. Q. The first paragraph of the letter begins: 'In answer to your favor of December 2, with reference to the amount of construction of the Sibley, Lake Bisteneau & Southern Railway Company, completed prior to the adoption of the Constitution of 1898, and also that part completed since,' etc. Did you not purport, in the communication to the state board of appraisers, to get them to understand that the mileage had been completed in your understanding of the term? A. No; not that it was laid, because I knew that the rails had not been laid, but the roadbed had been thrown up and the grade was done."

In January, 1904, therefore, plaintiff, in order to get the benefit of the exemption declared by article 230 of the Constitution, in favor of railroads thereafter constructed and completed prior to January 1, 1904, represented to the state authorities that the stretch of road here in question had been completed in 1903, though in point of fact they had but completed the grading of the roadbed. By the amendment to the Constitution, adopted in 1904, the exemption was extended to railroads, "constructed and completed subsequently to January 1, 1905, and prior to January 1, 1909," and the contention now is that the same stretch of road was not only *not* completed in 1903, or at any time prior to January 1, 1905, but that the grading of the roadbed, prior to January 1, 1905, is not to be considered at all in determining within what period, or between what dates, the road was "constructed and completed," and that the only work which should be considered for the purposes of that question is that which was done between January 1, 1905, and January 1, 1909,

the period required to give plaintiff the benefit of the exemption.

The amendment of 1904, reads, in part, as follows:

"There shall be exempt from taxation * * * from the date of its completion any railroad or part of railroad that shall have been constructed and completed subsequently to January 1, 1905, and prior to January 1, 1909. This exemption shall include and apply to all the rights of way, roadbed, sidings, rails and other superstructures upon such rights of way, roadbed or sidings, and to all depots, station houses, buildings, erections, and structures appurtenant to such railroads and the operation of the same, but shall not include the depots, warehouses, station houses and other structures and appurtenances nor the land upon which they are erected at terminal points, and for which franchises have been granted and obtained: * * * And provided further that this exemption shall not apply to double tracks, sidings, switches, depots or other improvements or betterments which may be constructed by railroads now in operation within the state, other than extensions or new lines constructed by such railroads."

[2] Counsel for plaintiff, referring to article 230 of the Constitution, on the one hand, and the provision above quoted, on the other (which provision, we may add, contains no reference to the article), say in their brief:

The one provides for the exemption to all railroads and parts of railroads that are *"constructed and completed subsequent to the adoption of the Constitution and prior to Jan. 1, 1904,"* while the other provides for the exemption to apply to all roads or parts of railroads that are *"constructed and completed subsequent to Jan. 1, 1905, and prior to Jan. 1, 1909,"* but that this does not mean the construction of the road bed and the beginning of the building should have been subsequent to the adoption of the Constitution on the one hand or subsequent to Jan. 1, 1905, on the other hand. It only means that the completion of the *railroad* should be subsequent to those dates, and this regardless of the time when the construction began, and this is conclusively shown by the proviso in the original article 230 of the Constitution of 1898 and which reads as follows: *"Nor shall the exemption hereinabove granted apply to any railroad or part of such railroad, the construction of which was begun and the road bed of which was substantially completed at the date of the adoption of this Constitution."*

We have quoted the counsel literally and have given his inverted commas and italics, and, as may be seen, either the counsel or the

printer have fallen into some errors, the most peculiar of which consists of the insertion in the supposed quotation from article 230 of the Constitution of 1898 of the word "subsequent," in place of which the word "hereafter" appears in the article, as written.

We say peculiar, because the learned counsel immediately argue that neither the language of article 230 nor that of the amendment "mean" (that) the construction of the roadbed and the "beginning of the building should have been subsequent to the adoption of the Constitution * * * or subsequent to January 1, 1905."

The article, however, grants the exemption to "any railroad or part of such railroad that may *hereafter* be constructed and completed prior to January 1, 1904," which means that the construction and the completion were alike to have been accomplished between the date that the Constitution became the supreme law and January 1, 1904; and the amendment grants the exemption to any such road or part of road "that shall have been constructed *and* completed subsequently to January 1, 1905, and prior to January 1, 1909"; the intention evidently being to again open the door, which, under article 230 of the Constitution, had been closed on January 1, 1904, to belated *new* enterprises, and at the same time the exclude from the exemption granted by the amendment investments already made, and which had already become subject to taxation, in terminal facilities or franchises, and which, with such exemption, and no obligation resting upon the owners to build *railroads*, might have been used merely as a basis for private speculation. Mr. Martin, the witness to whom we have heretofore referred, was unable to say, with any degree of certainty, at what time freight or passengers were carried between Hall Summit and the parish line, or to say that the road, between those points, was equipped, prior to January 1, 1909, with a single passenger or freight car; the most that he was willing to testify to on that subject being that they had a caboose, in which white and colored passengers were separated, and 108 logging cars. But it was admitted that the road was owned by the same persons who owned the Globe Lumber Company, and was run in their interest as a logging road, and necessarily the caboose had to be provided for their employés, but the proposition that the road was thereby equipped for the carriage of passengers is rather too strong food for ordinary mental digestion; and the same thing may be said of logging cars as an equipment for a freight carrying railroad, since it is fairly well known that they will hold nothing but logs and will hold them only when they are securely chained.

The word "completed," as applied to a railroad, in connection with the obligation to pay stock subscriptions, and with the right to public aid to be granted on "completion," has been held to mean that the road was carrying passengers and freight. O'Neal v. King, 48 N. C. 517.

That the road is in condition to be operated for regular passenger and freight traffic, and is actually in use. Tower v. Detroit, 34 Mich. 328.

That it should be so far completed that it might be properly and regularly used for the purpose of transferring freight and passengers. Southern Kansas & P. R. v. Towner, 41 Kan. 72, 21 Pac. 221.

That it shall be reasonable, safe, fit, and convenient for public use and accommodation. Manchester & K. R. v. City of Keene, 62 N. H. 81.

It has been held by this court that the exemption granted by article 230 of the Constitution "was intended to encourage enterprises of some importance and was never intended to apply to a private logging railroad or a tramway." Louisiana & Ark. R. Co. v. State Board, 135 La. 69, 64 South. 985.

136 LA.—26

Plaintiff having failed to show that the section of road here in question was constructed and completed between January 1, 1905, and January 1, 1909, it is not entitled to the exemption claimed.

The judgment heretofore rendered herein is therefore reinstated and made the final judgment of the court.